Fuld, J.
“ The assault upon the citadel of privity ”, Chief Judge Cabdozo wrote in 1931, “is proceeding in these days apace.” (Ultramares Corp. v. Touche, 255 N. Y. 170, 180.) In these days, too, for the present appeal, here by leave of the Appellate Division on a certified question, calls upon us to decide whether, under the facts disclosed, privity of contract is essential to maintenance of an action against a manufacturer for breach of express warranty.
American Cyanamid Company is the manufacturer of chemical resins, marketed under the registered trade-mark “ Cyana ”, which are used by textile manufacturers and finishers to process *9 fabrics in order to prevent them from shrinking. Apex Knitted Fabrics and Fairtex Mills are manufacturers of fabrics who were licensed or otherwise authorized by Cyanamid to treat their goods with “ Cyana” and to sell such goods under the “ Cyana ” label and with the guaranty that they were “ Cyana ” finished. Bandy Knitwear, a manufacturer of children’s knitted sportswear and play clothes, purchased large quantities of these “ Cyana ” treated fabrics from Apex and Fairtex. After most of such fabrics had been made up into garments and sold by Bandy to customers, it was claimed that' ordinary washing-caused them to shrink and to lose their shape. This action for breach of express warranty followed, each of the 3 parties being made the subject of a separate count. After serving its answer, Cyanamid, urging lack of privity of contract, moved for summary judgment dismissing the cause of action asserted against it, and it is solely with this cause of action that we are concerned.[1]
Insofar as relevant, the complaint alleges that Cyanamid “ represented ” and “ warranted ” that the “ Cyana ” finished fabrics sold by Fairtex and Apex to the plaintiff would not shrink or lose their shape when washed and that the plaintiff purchased the fabrics and agreed to pay the additional charge for the cost involved in rendering them shrink-proof “ in reliance upon” Cyanamid’s representations. However, the complaint continues, the fabrics were not as represented since, when manufactured into garments and subjected to ordinary washing, they shrank and failed to hold their shape. The damages suffered are alleged to be over $208,000.
According to the complaint and the affidavits submitted in opposition to Cyanamid’s motion, the representations relied upon by the plaintiff took the form of written statements expressed not only in numerous advertisements appearing in trade journals and in direct mail pieces to clothing manufac *10 turers, but also in labels or garment tags furnished by Cyanamid. These labels bore the legend,
“ A Cyana Finish This Fabric Treated for Shrinkage Control Will Not Shrink or Stretch Out of Fit Cyanamid ’ ’,
and were issued to fabric manufacturers using the “ Cyana Finish ’ ’ only after Cyanamid had tested samples of the fabrics and approved them. Cyanamid delivered a large number of these labels to Fairtex and Apex and they, with Cyanamid’s knowledge and approval, passed them on to garment manufacturers, including the plaintiff, so that they might attach them to the clothing which they manufactured from the fabrics purchased.
As noted, Cyanamid moved for summary judgment dismissing the complaint against it on the ground that there was no privity of contract to support the plaintiff’s action. The court at Special Term denied the motion and the Appellate Division unanimously affirmed the resulting order.
Thirty-nine years ago, in Chysky v. Drake Bros. Co. (235 N. Y. 468), this court decided that an action for breach of implied warranty could not succeed absent privity between plaintiff and defendant and, some time later, in Turner v. Edison Stor. Battery Co. (248 N. Y. 73), we reached a similar conclusion with respect to express warranties, writing, “ There can be no warranty where there is no privity of contract ’ ’ (p. 74).[2] This traditional privity limitation on a seller’s liability *11 for damage resulting from breach of warranty has not, however, been adhered to with perfect logical consistency (see e.g., Ryan v. Progressive Grocery Stores, 255 N. Y. 388; Bowman v. Great A. & P. Tea Co., 308 N. Y. 780; Mouren v. Great A. & P. Tea Co., 1 N Y 2d 884) and, just a year ago, in Greenberg v. Lorenz (9 N Y 2d 195), we noted the definite shift away from the technical privity requirement and recognized that it should be dispensed with in a proper case in the interest of justice and reason. More specifically, we held in Greenberg that, in cases involving foodstuffs and other household goods, the implied warranties of fitness and merchantability run from the retailer to the members of the purchaser’s household, regardless of privity of contract. We are now confronted with the further but related question whether the traditional privity limitation shall also be dispensed with in an action for breach of express warranty by a remote purchaser against a manufacturer who induced the purchase by representing the quality of the goods in public advertising and on labels which accompanied the goods.
It was in this precise type of case, where express representations were made by a manufacturer to induce reliance by remote purchasers, that “the citadel of privity” was successfully breached in the State of Washington in 1932. (See Baxter v. Ford Motor Co., 168 Wash. 456; same case after new trial, 179 Wash. 123.) It was the holding in the Baxter case that the manufacturer was liable for breach of express warranty to one who purchased an automobile from a retailer since such purchaser had a right to rely on representations made by the manufacturer in its sales literature, even though there was no privity of contract between them. And in the 30 years which *12 have passed since that decision, not only have the courts throughout the country shown a marked, and almost uniform, tendency to discard the privity limitation and hold the manufacturer strictly accountable for the truthfulness of representations made to the public and relied upon by the plaintiff in making his purchase,[3] but the vast majority of the authoritative commentators have applauded the trend and approved the result.[4]
T The rationale underlying the decisions rejecting the privity requirement is easily understood in the light of present-day commercial practices. It may once have been true that the warranty which really induced the sale was normally an actual term of the contract of sale. Today, however, the significant warranty, the one which effectively induces the purchase, is frequently that given by the manufacturer through mass advertising and labeling to ultimate business users or to consumers with whom he has no direct contractual relationship.
The world of merchandising is, in brief, no longer a world of direct contract; it is, rather, a world of advertising and, when representations expressed and disseminated in the mass communications media and on labels (attached to the goods themselves) prove false and the user or consumer is damaged by reason of his reliance on those representations, it is difficult to justify the manufacturer’s denial of liability on the sole ground of the absence of technical privity. Manufacturers make extensive use of newspapers, periodicals and other media to call attention, in glowing terms, to the qualities and virtues of their products, and this advertising is directed at the ultimate consumer or at some manufacturer or supplier who is not in *13 privity with them. Equally sanguine representations on packages and labels frequently accompany the article throughout its journey to the ultimate consumer and, as intended, are relied upon by remote purchasers. Under these circumstances, it is highly unrealistic to limit a purchaser’s protection to warranties made directly to him by his immediate seller. The protection he really needs is against the manufacturer whose published representations caused him to make the purchase:
The policy of protecting the public from injury, physical or pecuniary, resulting from misrepresentations outweighs allegiance to an old and ont-moded technical rule of law which, if observed, might be productive of great injustice. The manufacturer places his product upon the market and, by advertising and labeling it, represents its quality to the public in such a way as to induce reliance upon his representations. He unquestionably intends and expects that the product will be purchased and used in reliance upon his express assurance of its quality and, in fact, it is so purchased and used. Having invited and solicited the use, the manufacturer should not be permitted to avoid responsibility, when the expected use leads to injury and loss, by claiming that he made no contract directly with the user.
It is true that in many cases the manufacturer will ultimately be held accountable for the falsity of his representations, but only after an unduly wasteful process of litigation. Thus, if the consumer or ultimate business user sues and recovers, for breach of warranty, from his immediate seller and if the latter, in turn, sues and recovers against his supplier in recoupment of his damages and costs, eventually, after several separate actions by those in the chain of distribution, the manufacturer may finally be obliged “ to shoulder the responsibility which should have been his in the first instance.” (Hamon v. Digliani, 148 Conn. 710, 717; see Kasler & Cohen v. Slavouski [1928], 1 K. B. 78, where there was a series of 5 recoveries, the manufacturer ultimately paying the consumer’s damages, plus a much larger sum covering the costs of the entire litigation.) As is manifest, and as Dean Prosser observes, this circuity of action is “ an expensive, time-consuming and wasteful process, and it may be interrupted by insolvency, lack of jurisdiction, disclaimers, or the statute of limitations ’ ’. (Prosser, The Assault *14 upon the Citadel [Strict Liability to the Consumer], 69 Yale L. J. 1099, 1124.)
Indeed, and it points up the injustice of the rule, insistence upon the privity requirement may well leave the aggrieved party, whether he be ultimate business user or consumer, without a remedy in a number of situations. For instance, he would be remediless either where his immediate seller’s representations as to quality were less extravagant or enthusiastic than those of the manufacturer[5] or where — as is asserted by Fairtex in this very case (7 N Y 2d 791; see, also, supra, p. 9, n. 1) — there has been an effective disclaimer of any and all warranties by the plaintiff’s immediate seller. Turning to the case before us, even if the representations respecting “Cyana” treated fabric were false, the plaintiff would be foreclosed of all remedy against Fairtex, if it were to succeed on its defense of disclaimer, and against Cyanamid because of a lack of privity. (Cf. Baxter v. Ford Motor Co., 168 Wash. 456; same case, 179 Wash. 123, supra.)
Although we believe that it has already been made clear, it is to be particularly remarked that in the present case the plaintiff’s reliance is not on newspaper advertisements alone. It places heavy emphasis on the fact that the defendant not only made representations (as to the nonshrinkable character of “ Cyana Finish ” fabrics) in newspapers and periodicals, but also repeated them on its own labels and tags which accompanied the fabrics purchased by the plaintiff from Fairtex and Apex. There is little in reason or logic to support Cyanamid’s submission that it should not be held liable to the plaintiff even though the representations prove false in fact and it is ultimately found that the plaintiff relied to its harm upon such representations in making its purchases.
*15 We perceive no warrant for holding — as the appellant urges — that strict liability should not here be imposed because the defect involved, fabric shrinkage, is not likely to cause personal harm or injury. Although there is language in some of the opinions which appears to support Cyanamid’s contention (see Worley v. Procter & Gamble Mfg. Co., 241 Mo. App. 1114, 1121; Dimoff v. Ernie Majer, Inc., 55 Wn. [2d] 385; see, also, Laclede Steel Co. v. Silas Mason Co., 67 F. Supp. 751), most of the courts which have dispensed with the requirement of privity in this sort of case have not limited their decisions in this manner. (See, e.g., Burr v. Sherwin Williams Co., 42 Cal. 2d 682, 696-697 [insecticide; damage to crops]; State Farm Mut. Auto Ins. Co. v. Anderson-Weber, Inc., 110 N. W. 2d 449 [Iowa], [automobile; property damage]; Graham v. Watts & Son, 238 Ky. 96 [mislabeled seed; wrong crop]; Silverman v. Samuel Mallinger Co., 375 Pa. 422, 428-429 [glass jars; commercial loss]; United States Pipe & Foundry Co. v. City of Waco, 130 Tex. 126, cert. den. 302 U. S. 749 [cast iron pipes; property damage].) And this makes sense. Since the basis of liability turns not upon the character of the product but upon the representation, there is no justification for a distinction on the basis of the type of injury suffered or the type of article or goods involved.
We are also agreed that the present case may not be distinguished,-and liability denied, on the ground that the article sold by the appellant, resin, is different from that purchased by the plaintiff, fabric. To be sure, as Cyanamid urges, the failure to render the fabric shrink-proof may rest with Fairtex and Apex, but the short and simple answer is that Cyanamid actually and expressly represented that fabrics accompanied by the labels which it supplied were “ Cyana Finish ” and would not shrink or lose their shape. Since it made such representations, Cyanamid may not disclaim responsibility for them. If the ultimate fault for the plaintiff’s loss is actually that of Fairtex and Apex, Cyanamid’s appropriate recourse is against them.
Nor may it be urged that section 93 of the Personal Property Law renders privity of contract necessary. The Legislature has there defined a warranty as an “affirmation” (or “promise”) made by a seller, but the section nowhere states *16 that liability for breach of express warranty extends only to the warranting seller’s immediate buyer and cannot extend to a later buyer who made the purchase from an intermediate seller but in foreseeable and natural reliance on the original seller’s affirmations. Indeed, we made the matter clear in Greenberg v. Lorenz when, after observing that the rule requiring a direct contractual relationship between the plaintiff and the defendant is of “ judicial making ”, we went on to say, “ our statutes say nothing at all about privity ” (9 N Y 2d 195, 200).
In concluding that the old court-made rule should be modified to dispense with the requirement of privity, we are doing nothing more or less than carrying out an historic and necessary function of the court to bring the law into harmony ‘ ‘ with modern-day needs and with concepts of justice and fair dealing.” (Bing v. Thunig, 2 N Y 2d 656, 667; see Greenberg v. Lorenz, 9 N Y 2d 195, 200, supra; Woods v. Lancet, 303 N. Y. 349, 355.)
The order appealed from should be affirmed, with costs, and the question certified answered in the negative.

. We previously had before us an appeal involving the defendant Fairtex’s motion for summary judgment in which it attacked the cause of action directed against it. The Appellate Division agreed with Fairtex’s contention that it' had, in its contract with the plaintiff, effectively disclaimed any and all warranties and representations and granted summary judgment dismissing the cause of action (7 A D 2d 116). We reversed that judgment on the ground that issues of fact were raised which required a trial (7 N Y 2d 791).

. These decisions proceed, manifestly, from a characterization of the breach of warranty action as one essentially contractual in nature. The soundness of this characterization becomes highly questionable, however, when the problem is seen against the backdrop of legal history. The action for breach of warranty “was, in its origin, a pure action of tort”. (Ames, Lectures on Legal History [1913], p. 136, reprinted, with revisions, from 2 Harv. L. Rev. 1, 8; see, also, 1 Williston, Sales [rev. ed., 1948], § 195, pp. 501-502; Prosser, Torts [2d ed., 1955], § 83, p. 493.) Indeed, the earliest reported case upon a warranty arose in 1383 (Fitz. Abr. Monst. de Faits, pl. 160; see Ames, *11 Lectures on Legal History [1913], p. 136), a century before special assumpsit found its place among the forms of action. And it was not until 1778 that the first decision was reported in which an action on a warranty was brought in assumpsit. (Stuart v. Wilkins, 1 Dougl. 18; see Ames, Lectures on Legal History [1913], p. 137.) Accordingly, for some 400 years the action rested not on an enforcible promise but on a wrong or tort. In the historical development of the law of warranty, however, as so often happens in law and life in general, accident was evidently confused with essence; from the fact that the cases which arose involved contractual relationships and represented enforcible promises, the courts seem to have concluded that the contract was of the essence of the action. (See Prosser, Torts [2d ed., 1955], § 84, p. 507.) The occasion for the warranty was constituted a necessary condition of it.

. See, e.g., Burr v. Sherwin Williams Co., 42 Cal. 2d 682, 696-697; Hamon v. Digliani, 148 Conn. 710; Graham v. Watts & Son, 238 Ky. 96; Simpson v. American Oil Co., 217 N. C. 542, 546; Rogers v. Toni Home Permanent Co., 167 Ohio St. 244; Silverman v. Samuel Mallinger Co., 375 Pa. 422, 428-429. But see, contra, Rachlin v. Libby-Owens-Ford Glass Co., 96 F. 2d 597, 600.

. See, e.g., 1 Williston, Sales [rev. ed., 1948], § 244a; 1 Frumer & Friedman, Products Liability [1960], § 16.04, subd. [4]; Feezer, Manufacturer’s Liability for Injuries Caused by his Products: Defective Automobiles, 37 Mich. L. Rev. 1; Holdridge, Advertised-Product Liability, 8 Clev.-Mar. L. Rev. 14, 39; Noel, Manufacturers of Products — The Drift Toward Strict Liability, 24 Tenn. L. Rev. 963, 999-1009, 1018; Prosser, The Assault upon the Citadel (Strict Liability to the Consumer), 69 Yale L. J. 1099, 113A-1138.

. Typical of this would be a case where the consumer, relying on representations contained on labels or in advertisements for which the manufacturer is responsible, purchases a brand-name article from the shelves of the retailer. In such a case, the retailer ordinarily makes no express warranty and the purchaser may not even invoke an implied warranty of fitness (Personal Property Law, § 96, subd. 4). Consequently, if privity were prerequisite to an action by the consumer against the manufacturer, whcse representations induced his purchase, he would (absent proof of negligence) be denied all redress except, perhaps, for breach of the implied warranty of merchantability (Personal Property Law, § 96, subd. 2).