Lloyd M. SEVITS, Plaintiff,

v.

McKIERNAN–TERRY CORPORATION (NEW JERSEY), McKiernan-Terry Corporation (Delaware), Radcom Division of Litton Industries, Inc., M. T. Liquidation Corporation and Litton Systems, Inc., Defendants.

No. 65 Civ. 1804.

United States District Court
S. D. New York.

Aug. 2, 1966.

Lilly, Sullivan & Purcell, New York City, for plaintiff.

Skadden, Arps, Slate, Meagher & Flom, New York City, for defendants McKiernan-Terry and Liquidation Corp.

Townley, Updike, Carter & Rodgers, New York City, for defendant Litton Systems.

CANNELLA, District Judge.

Motion by the defendants McKiernan-Terry Corporation (Delaware) and Radcom Division of Litton Industries, Inc., pursuant to Rules 12(b) and 17(b) of the Federal Rules of Civil Procedure to dismiss the complaint, as amended, and quash the service of process as to said defendants on the grounds that said defendants are non-existent and cannot be sued in this action, and because attempted service of process upon these non-existing corporations was ineffectual, is granted.

Motion by defendants McKiernan-Terry Corporation (Delaware), Radcom Division of Litton Industries, Inc. and Litton Systems, Inc. pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure to dismiss the third count of the complaint, as amended, on the ground that it fails to state a claim upon which relief can be granted, is denied.

Plaintiff brings this action for injuries allegedly suffered by him on the high seas while he was performing his duties as a member of the United States Navy aboard the aircraft carrier U.S.S. Constellation.

Plaintiff claims that his injuries were caused by the failure of an arresting engine (used in aircraft landings aboard the U.S.S. Constellation) manufactured by the defendants and sold by them to the U. S. Navy.

With respect to the first motion, it is plaintiff's contention that there is much confusion about corporate relations of the defendants and the existence of some of the defendants, and to protect himself, he sued all of the defendants, since he was not sure where the ultimate liability rested. Plaintiff claims that the bringing of this motion is merely a dilatory tactic on the part of defendants Radcom and McKiernan-Terry Corp. (Delaware).

The court after a perusal of the documentary evidence presented by the defendants, finds that such evidence clearly establishes that Radcom is a successor by change of name under Delaware law to McKiernan-Terry Corporation (Delaware). McKiernan-Terry Corporation (Delaware) was merely the former name of Radcom.

The documentary evidence also clearly establishes that Radcom merged into Litton Systems, Inc. pursuant to Delaware and Maryland law and Litton was the sole surviving corporation.

Corporate existence and the capacity of a corporation to be sued are determined by the law of the state of incorporation. Fed.R.Civ.P. 17(b). See Chicago T & T Co. v. Forty-One Thirty-Six Wilcox Bldg. Corp., 302 U.S. 120, 58 S.Ct. 125, 82 L.Ed. 147 (1937); Walder v. Paramount Publix Corp., 132 F.Supp. 912 (S.D.N.Y.1955); Newmark v. Abeel, 102 F.Supp. 993 (S.D.N.Y.1952).

Delaware law is the applicable law and under Delaware law it is settled that the separate corporate existence of a constituent corporation ceases upon merger and the emerging corporation is the only corporation with capacity to be sued and process cannot be served on the constituent corporation. Delaware Gen. Corp.Law § 259. See Argenbright v. Phoenix Finance Co. of Iowa, 21 Del.Ch.

288, 187 A. 124 (1936). See also United States v. Borden Co., 28 F.Supp. 177 (N.D.Ill.) modified, 308 U.S. 188, 60 S. Ct. 182, 84 L.Ed. 181 (1939). Therefore, the separate corporate existence of Radcom ceased upon merger with Litton Systems, Inc.

In view of the fact that Radcom and McKiernan-Terry Corp. (Delaware) had ceased to exist they could not properly be served with process. Fed.R.Civ.P. 12(b)(4) & (5); neither could the court have in personam jurisdiction over them. Fed. R.Civ.P. 12(b) (2). Further, the complaint, as amended, could not state a claim against Radcom and McKiernan-Terry Corp. (Delaware), since they had ceased to exist. Fed.R.Civ.P. 12(b) (6).

In addition, both Radcom and McKiernan-Terry lacked capacity to be sued under Delaware law. Fed.R.Civ.P. 17(b).

The second motion is made by defendants Radcom, McKiernan-Terry Corp. (Delaware) and Litton Systems, Inc.[1] It is directed at the third cause of action of the amended complaint only. This third cause of action pleads an implied warranty of fitness for use, allegedly running to the plaintiff, arising out of the sale of the engine by defendants to the Navy and pleads further that plaintiff's injuries resulted from defendants' breach of this implied warranty.

Jurisdiction in this case is predicated on diversity of citizenship and therefore the law of the State of New York applies, Erie R. Co. v. Tompkins,[2] 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), including its conflict of law rules. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Since the alleged wrong occurred on the high seas, plaintiff's claim is for a maritime tort. Rogers v. City of New York, 46 Misc.2d 373, 259 N.Y.S.2d 604 (Sup.Ct.1965); cf. Weinstein v. Eastern Airlines, Inc., 316 F.2d 758 (3rd Cir. 1963).

The validity of the claim is determined by the New York courts in accordance with the substantive law of admiralty (general maritime law). Rogers v. City of New York, supra. See also Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942); Chelentis v. Luckenbach Steamship Co., 247 U. S. 372, 38 S.Ct. 501, 62 L.Ed. 1171 (1918). Therefore, general maritime law must be applied to determine whether or not the third cause of action of the amended complaint will stand.

The parties are in agreement that the general maritime law is applicable with respect to the third cause of action. The issue in controversy is whether or not the implied warranties of fitness and merchantability are recognized in admiralty for injuries sustained in a maritime tort, and if so, whether they run against a component part manufacturer.

The New York law regarding the breach of implied or express warranties has undergone and is still undergoing significant changes. For present purposes, a brief summary of the development of the law in this area will be sufficient.

It was quite clear at one time that an action for the breach of an implied warranty could not succeed absent privity between the plaintiff and the defendant. Chysky v. Drake Bros. Co., 235 N.Y. 468, 139 N.E. 576, 27 A.L.R. 1533 (1923). The same could be said with respect to express warranties. Turner v. Edison Storage Battery Co., 248 N.Y. 73, 161 N.E. 423 (1928). See also Pearlman v.

---

1. In view of the fact that the entire complaint, as amended, has been dismissed with respect to defendants Radcom and McKiernan-Terry Corp. (Delaware), the disposition of this second motion will have relevancy only insofar as defendant Litton Systems, Inc. is concerned.

2. "In essence, the intent of that decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." Guaranty Trust Co. of N. Y. v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945).

Garrod Shoe Co., 276 N.Y. 172, 11 N.E. 2d 718 (1937).

The warranty was formerly looked upon as an incident of a contract of sale. Fairbank Canning Co. v. Metzger, 118 N.Y. 260, 23 N.E. 372 (1889). It did not run with the chattel. Nichols v. Clark, MacMullen & Riley, 261 N.Y. 118, 184 N.E. 729 (1933). Therefore, as to any merchandise or chattels, there was no implied warranty of merchantability or fitness, except as to the buyer. Ryan v. Progressive Grocery Stores, 255 N.Y. 388, 175 N.E. 105, 74 A.L.R. 339 (1931).

However, in recent years, New York courts have chiseled away at the citadel of privity.

In Greenberg v. Lorenz, 9 N.Y.2d 195, 213 N.Y.S.2d 39, 173 N.E.2d 773 (1961), there was a definite shift away from the technical requirement of privity. The New York Court of Appeals in *Greenberg* held that the implied warranty of fitness and merchantability, at least in the case of foodstuffs and other household goods, runs from the retailer to members of the purchaser's household, regardless of privity.

The significance of privity was further lessened in Randy Knitwear, Inc. v. American Cyanamid Co., 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399 (1962), which concerned itself with an express warranty. The Court of Appeals concluded that in the light of present day commercial practices and the decision in Greenberg v. Lorenz, supra, the traditional privity limitation should be dispensed with "in an action for breach of express warranty by a remote purchaser against a manufacturer who induced the purchase by representing the quality of the goods in public advertising and on labels which accompanied the goods". Randy Knitwear, Inc. v. American Cyanamid Co., 11 N.Y.2d at 11, 226 N.Y.S.2d at 366, 188 N.E.2d at 401.

The *Greenberg* and *Randy Knitwear, Inc.* cases extended the coverage of warranties in favor of noncontracting consumers. However, the New York Court of Appeals in Goldberg v. Kollsman Instrument Corp., 12 N.Y.2d 432, 240 N. Y.S.2d 592, 191 N.E.2d 81 (1963), extended the coverage much further and in doing so, in essence, caused the citadel of privity, already weakened by *Greenberg* and *Randy Knitwear, Inc.*, to collapse completely.

In *Goldberg* the Court of Appeals held that an airplane manufacturer's implied warranty of fitness of his airplane for the intended use ran in favor of airline passengers riding in such plane regardless of privity of contract. The court stated: "A breach of warranty, it is now clear, is not only a violation of a sales contract out of which the warranty arises but is a tortious wrong suable by a noncontracting party whose use of the warranted article is within the reasonable contemplation of the vendor or manufacturer. Goldberg v. Kollsman Instrument Corp., 12 N.Y.2d at 436, 240 N.Y.S. 2d at 594, 191 N.E.2d at 82.

Thus, warranties are no longer exclusively within the realm of contracts, but have taken on tortious overtones.

The court further pointed out in relation to "things of danger" that "where an article is of such a character that when used for the purpose for which it is made it is likely to be a source of danger to several or many people if not properly designed and fashioned, the manufacturer as well as the vendor is liable, for breach of law-implied warranties, to the persons whose use is contemplated." Goldberg v. Kollsman Instrument Corp., 12 N.Y.2d 436, 437, 240 N.Y.S.2d at 594, 595, 191 N.E.2d at 83.

It is quite clear therefore, that if the question of whether or not the implied warranty of merchantability and fitness is recognized in admiralty law, is answered in the affirmative, the plaintiff might properly plead a cause of action based on such warranty. The question of exactly against whom such cause of action can be directed will be discussed later.

In support of their position, defendants cite a case decided by the District Court of Delaware, Noel v. United Aircraft Corp., 204 F.Supp. 929 (D.Del. 1962), which held that the implied war-

ranties of fitness and merchantability are not recognized in admiralty law.

This court does not follow the line of reasoning presented in the *Noel* case. Instead, it follows the sound reasoning propounded in two cases in this District.

In Middleton v. United Aircraft Corp., 204 F.Supp. 856 (S.D.N.Y.1960), the court while explicitly concerned with the privity problem, at least impliedly indicated that implied warranties might properly be invoked in admiralty law. In Montgomery v. Goodyear Tire & Rubber Co., 231 F.Supp. 447 (S.D.N.Y.1964), where the facts were somewhat similar to those present in the instant case [3] the court quite clearly held that "an action based on breach of implied warranty will lie in admiralty." Montgomery v. Goodyear Tire & Rubber Co., supra at 455.

Thus, it is quite evident that there is a conflict of opinion between the district courts on the question of the recognition of implied warranties in admiralty.

■ With due respect for the decision of the District Court of Delaware in the *Noel* case, this court adopts the holding of the court in the *Montgomery* case. There is no logical reason which justifies the position that implied warranties are not and should not be recognized in admiralty. If the plaintiff can make out an action based on implied warranty, the fact that admiralty law is involved should not be a bar to his recovery on that theory, if he can prove his case.

■ The defendants contend that even assuming the implied warranties of fitness and merchantability are recognized in admiralty as propounded in the *Montgomery* case, there is no instance where they have been applied to the manufacturer of component parts, nor should they be.

In the *Montgomery* case, as well as in the Goldberg v. Kollsman Instrument Corp., supra, whose reasoning the court

in *Montgomery* felt constrained to apply, although not bound to do so, the action against the component part manufacturers were dismissed. The reason for such dismissal in both cases stemmed from the fact that the manufacturer of the airplane in *Kollsman* and of the dirigible in *Montgomery* could quite properly be sued and there was no necessity to allow the plaintiff to sue a component part manufacturer. As stated by the New York Court of Appeals in the *Kollsman* case: "However, for the present at least we do not think it necessary so to extend this rule as to hold liable the manufacturer * * * of a component part. Adequate protection is provided for the passenger by casting in liability the airplane manufacturer which put into the market the completed aircraft." Goldberg v. Kollsman Instrument Corp., 12 N.Y.2d at 437, 240 N.Y.S.2d at 595, 191 N.E.2d at 83.

The instant case can be distinguished on this point since the plaintiff has no right to sue the manufacturer of the entire ship since it is the United States Government and being a member of the United States Navy, he is not in a position in this particular case to sue the Government on the theory of an implied warranty. Thus, if he is forbidden to sue the manufacturer of the component part which allegedly caused the injury, the theory of implied warranty which he has a right to assert under admiralty law would become entirely meaningless.

This court finds that in the interest of justice and fairness, the plaintiff has a right to assert the theory of implied warranty against the manufacturer of the component part which allegedly caused the injury, viz, the aircraft arresting engine.

■ The court is well aware that it is treading on new grounds by allowing plaintiff to do this, but in the opinion of this court, the present trend of the law

---

3. In Montgomery the court was concerned with a libel in admiralty against the manufacturer of a naval dirigible and manufacturer of an electric warning bell device built into the dirigible. The dirigible crashed, causing the death of servicemen on active duty aboard the dirigible.

dictates such a finding.[4]  It should be kept in mind that the decision in this case has application only where from the very outset, it is not possible to bring suit against the manufacturer of the completed object, be it a ship or anything else.  Thus, the gates are not opened in every instance, to suits against manufacturers of component parts which allegedly caused an injury.

So ordered.

4. It is clearly the function of this court to apply the state law (New York, in this case), where jurisdiction is based on diversity of citizenship.  If there is an area not covered by state law, "an effort must be made to find a solution which accords with the tendencies inherent in the opinions of such [state] courts in the past."  United States Fidelity and Guaranty Co. v. Anderson Construction Co., 260 F.2d 172, 176 (9th Cir. 1958).  It is this court's duty to choose a rule which it believes the state courts will eventually adopt in the future, based on its knowledge of the methods such courts use in arriving at their decisions.