**U.S. CONCORD, INC., Plaintiff,**

**v.**

**HARRIS GRAPHICS CORPORATION, Defendant.**

**No. C-89-4003 SAW.**

United States District Court, N.D. California.

Feb. 5, 1991.

1054

Cooper, White & Cooper, Jeffrey Wong, Thomas Niu, San Francisco, Cal., Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, N.Y., for plaintiff.

George Yuhas, Edward Reines, Orrick, Herrington & Sutcliffe, San Francisco, Cal., for defendant.

## MEMORANDUM AND ORDER

WEIGEL, District Judge.

The Second Amended Complaint in this action alleges eleven causes of action against defendant. Defendant's motion to dismiss eight of these claims has been submitted for decision. Because of the complexity of the questions involved, an under-

standing of the history of this litigation is essential.

## BACKGROUND

Alleging myriad theories of liability, plaintiff U.S. Concord, Inc. ("Concord") sues defendant Harris Graphics, Inc. ("Harris") for economic losses sustained from defendant's sale of an allegedly defective printing press. In 1987 Haljak Leasing Co. ("Haljak") purchased a complex printing press from defendant. Haljak then leased the press to S & G Press, Inc.[1] At Harris's request, plaintiff agreed to finance the purchase of the press. S & G ultimately defaulted on the loan.

Plaintiff and defendant entered into two separate agreements to facilitate the financing arrangements. The first agreement ("indemnity agreement") provided that defendant would indemnify plaintiff in the event that the press was not accepted by S & G. The second agreement ("recourse agreement") provided that in the event of a default by S & G, defendant would pay plaintiff 20% of a stipulated loss value as well as interest on the total stipulated loss value. In addition, the recourse agreement set forth the parties' respective obligations with respect to remarketing the press.

This litigation has a protracted and tortured history. In July 1988 S & G filed suit in this Court against Harris and Concord ("S & G action"), alleging that the press was defectively designed and manufactured. S & G later filed for bankruptcy, staying Concord's efforts to collect from S & G on its counterclaim.[2] Concord filed two separate actions against Harris, one alleging fraud, and the other, breach of the indemnity agreement. Harris, in turn, filed suit in New York, seeking a declaration of the parties' rights and liabilities under the recourse agreement.

In an Order dated October 11, 1990, this Court granted plaintiff leave to file an amended complaint, effectively consolidating the three pending actions between the parties. This amended complaint added claims for violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO") and for implied indemnity. Shortly thereafter, plaintiff amended its complaint once more to add contract and warranty claims.

As noted at the outset, the Second Amended Complaint includes eleven claims for relief. Defendant moves to dismiss the following eight: (1) fraud; (2) negligent misrepresentation; (3) RICO; (4) implied indemnity; (5) breach of express warranty; (6) breach of the implied warranty of merchantability; (7) breach of the implied warranty of fitness; and (8) breach of a third-party beneficiary contract.

## SUMMARY OF DECISION

The issues raised by the motion to dismiss call for detailed analysis. However, a brief summary at this point is appropriate.

In its first claim, plaintiff charges defendant with fraud. This claim embraces two distinct theories of liability: (1) affirmative misrepresentations and (2) fraudulent concealment. With the exception of plaintiff's allegation regarding the falsity of defendant's 1985 annual report, the misrepresentation allegations fail to satisfy Federal Rule of Civil Procedure 9(b)'s requirement that fraud be averred with particularity. Plaintiff's third claim for negligent misrepresentation rests on these same defective allegations. Therefore, the Court dismisses plaintiff's fraud and negligent misrepresentation claims, with leave to amend, as to all affirmative misrepresentation allegations save for that regarding the annual report.

Plaintiff's fraudulent concealment claim withstands the motion to dismiss. New York law imposes a duty to disclose material information upon a party who possesses superior knowledge and is aware that an-

---

**1.** Haljak Leasing Co. and S & G Press will be referred to collectively as "S & G."

**2.** Before trial, Harris and S & G settled their dispute. On July 26, 1990, Concord gained a judgment for approximately $10,000,000 against the individual guarantors of its loan to S & G. Apparently, Concord has not yet collected that judgment.

other party may be acting on the basis of mistaken information. Here plaintiff charges defendant with concealing numerous consumer complaints regarding the press's performance—information to which Harris had superior access and of which Concord was allegedly unaware.

In its second cause of action, plaintiff avers that defendant violated RICO, 18 U.S.C. §§ 1962(a), (b) & (d), by committing several predicate acts of mail and wire fraud. Plaintiff has no standing to allege a RICO violation under Section 1962(a) because it has failed to allege injury from defendant's use or investment of racketeering proceeds. Similarly, plaintiff lacks standing to allege a RICO violation under Section 1962(b) because it has failed to allege injury from defendant's acquisition or maintenance of an interest in a RICO enterprise. The Court dismisses these claims with leave to amend. Nor may plaintiff allege a RICO conspiracy under Section 1962(d). Plaintiff claims that Harris conspired with its employees and representatives to violate RICO. A corporation cannot conspire with its own employees and officers. This claim is dismissed with prejudice.

In its fourth claim, plaintiff seeks implied indemnity from Harris for any liability it incurs in the S & G action. This claim is precluded because a party may seek indemnity only when it is innocent of wrongdoing. S & G alleged intentional fraud and conspiracy to defraud against Concord. If S & G prevails against Concord, then Concord necessarily will be guilty of intentional wrongdoing. The Court dismisses this claim with prejudice.

In counts seven, eight, and nine, plaintiff alleges breach of express and implied warranties against Harris. Dismissal is not warranted on these claims. New York's privity requirement is satisfied because the relationship between Harris and Concord is the "functional equivalent" of privity.

Finally, in its tenth claim, plaintiff sues for breach of a third-party beneficiary con-

tract between Harris and S & G. It may maintain this cause of action because the complaint alleges that Harris and S & G entered into the sales contract for the benefit of Concord.

## DISCUSSION

### I. Fraud (Count One)

Plaintiff's fraud claim embraces two distinct theories of liability: (1) defendant's affirmative misrepresentations to plaintiff and S & G, and (2) defendant's fraudulent concealment of adverse information regarding the quality of the printing press. Defendant attacks the sufficiency of both theories.

### A. *Affirmative Misrepresentations*

Concord alleges that Harris made several oral representations to Concord that the printing press was the "workhorse of the industry" and known for its speed and quality. Complaint, para. 8. In addition, plaintiff alleges that Harris represented to S & G that all units of the press were new (Complaint, para. 16) and that the press would be capable of producing quality product at a speed of 60,000 impressions per hour ("iph"). Complaint, para. 22. In fact, according to plaintiff, the printing press was incapable of producing high quality product at the warranted speed; two units of the press were not new; and the press was the subject of numerous consumer complaints.

Defendant persuasively argues that Concord's oral misrepresentation allegations fail to satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b).[3] To meet the rule's requirements, plaintiff must allege the time, place, and contents of the alleged fraud. *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985). Plaintiff has not satisfied this burden. Although plaintiff specifies the contents of the purported misrepresentations, it fails to allege their time and place.

**3.** Rule 9(b) provides:
In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Allegations such as "[d]uring the course of discussions in 1986 and 1987," "in or about May through December 1987," and "May 1987 and thereafter" (Complaint, paras. 8, 16) do not make the grade. The timing of these statements is particularly important because Concord must establish that it relied upon the misrepresentations in signing the security agreement with S & G and the recourse and indemnity agreements with Harris.[4]

■ At the hearing on January 10, 1991, plaintiff's counsel directed the Court's attention to its decision in *David K. Lindemuth Co. v. Shannon Financial Corp.*, 637 F.Supp. 991 (N.D.Cal.1986), which held that an allegation setting forth specific misrepresentations within an identified document satisfied Rule 9(b). *See id.* at 994. Relying on *Lindemuth*, plaintiff points to four specific documents containing alleged misrepresentations regarding the press's speed and newness. Plaintiff argues that reference to these four documents supplies the specificity required by Rule 9(b). These four documents are (1) Harris's 1985 annual report; (2) a letter dated September 17, 1987 from Harris to Concord; (3) the recourse agreement; and (4) the indemnity agreement. The Court finds that only the annual report supports plaintiff's position.

The complaint alleges that Harris gave Concord a copy of its 1985 annual report, which represented that the press was capable of producing saleable products at a speed of 60,000 iph. Complaint, para. 9. Concord further alleges that Harris knew or should have known that the press was incapable of performing at that speed. This allegation satisfies Rule 9(b).

Harris's September 17, 1987 letter to Concord, which again represented a printing speed of 60,000 iph (Complaint, para. 10), is insufficient to support plaintiff's fraud claim. All the relevant agreements were signed two months earlier, in July 1987. Although the allegation is specific, Concord's contention that the false statement induced it to provide financing is unpersuasive, since it was received by Concord *after* it had entered into the financing agreements.

Finally, plaintiff argued in its moving papers and at the hearing that the recourse and indemnity agreements contained the misrepresentation that the printing press was new. Although it is true that the agreements contain such a representation, nowhere in the *complaint* can be found an allegation that these agreements contained such a representation or were in any way false or misleading.

For these reasons, only plaintiff's allegation regarding Harris's 1985 annual report both supports plaintiff's misrepresentation claim and complies with Rule 9(b).

### B. *Fraudulent Concealment*

■ Plaintiff's fraudulent concealment claim is based on Harris's failure to disclose the many problems consumers have allegedly experienced with the printing press. Of course, there can be no liability for the concealment of information absent a duty to disclose. The parties disagree as to whether New York or California law applies to this claim. Defendant urges the Court to apply the more restrictive New York law, and plaintiff, the more liberal California law. Although the choice of law issue is a recurring one, it need not concern the Court here.[5] For even under New York law, defendant had a duty to disclose material information to plaintiff.

■ Under New York law, a duty to disclose arises where one party possesses superior knowledge not readily available to the other and that party knows the other is acting on the basis of mistaken knowledge. *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank*, 731 F.2d 112, 123 (2d Cir.

---

4. Moreover, in order for Harris's purported misrepresentations *to S & G* to be actionable by Concord, Concord must adequately allege that S & G relayed the false statements on to Concord. The complaint contains only a conclusory assertion that S & G did so relay the false information. Complaint, paras. 23–24.

5. In the earlier S & G action, this Court held that New York law governs the contractual relationship between S & G and Concord. *S & G Press, Inc. v. Harris Graphics Corp.*, 718 F.Supp. 1459, 1459–60 (N.D.Cal.1989).

1984); *Frigitemp Corp. v. Financial Dynamics Fund, Inc.*, 524 F.2d 275, 283 (2d Cir.1975). The complaint charges that Harris failed to disclose the numerous consumer complaints it received regarding the printing press's performance—information to which it had superior access. These allegations raise the reasonable inference that Harris knew Concord was unaware of these purported difficulties with the press.[6]

## II. Negligent Misrepresentation (Count Three)

■ In the alternative, plaintiff claims that the above misstatements constitute negligent misrepresentation. Defendant moves to dismiss the claim as precluded as a matter of law. Although the parties dispute whether California or New York law governs, the choice of law again has no effect on the outcome. Apparently conceding that California law would permit the negligent misrepresentation claim, Harris strenuously urges the application of the stricter New York law. Defendant contends that under New York law, an action for negligent misrepresentation lies only if there is a special relationship of trust or confidence between the plaintiff and defendant. Yet the New York Court of Appeals recently held that a negligent misrepresentation claim will survive a motion to dismiss if the complaint reveals that the relationship between the plaintiff and defendant "was so close as to be the functional equivalent of contractual privity." *Ossining Union Free School Dist. v. Anderson La Rocca Anderson*, 73 N.Y.2d 417, 419, 539 N.E.2d 91, 541 N.Y.S.2d 335, 335 (1989). The court found it sufficient that the complaint alleged that the defendants were aware that their representations would be transmitted to and relied upon by the plaintiff. *Id.* at 425, 539 N.E.2d at 95, 541 N.Y.S.2d at 339.

The complaint easily meets this standard. Concord alleges throughout that Harris made misrepresentations and concealed material facts for the purpose of inducing plaintiff to provide financing for the purchase of the press. Moreover, the relationship between Harris and Concord was not that of a manufacturer and remote purchaser. Not only did Harris actively seek plaintiff's reliance, but it entered into ancillary agreements with plaintiff to facilitate the sale of the press. Plaintiff has therefore alleged the necessary relationship for maintaining a negligent misrepresentation action against defendant.

Defendant further asserts that the negligent misrepresentation claim fails to satisfy Rule 9(b)'s particularity requirements. The point is well-taken. Since the claim is based upon the same flawed allegations of misrepresentation as the fraud count, it, too, fails for lack of specificity—again with the single exception of the allegation regarding the falsity of Harris's 1985 annual report.

## III. RICO (Count Two)

Claiming violations of RICO, 18 U.S.C. §§ 1962(a), (b), & (d), plaintiff alleges that defendant engaged in a pattern of racketeering activity by committing several predicate acts of mail and wire fraud. Defendant attacks the sufficiency of each alleged RICO violation. In addition, defendant contends that plaintiff's mail and wire fraud allegations fail to meet the particularity requirements of Federal Rule of Civil Procedure 9(b).

### A. *Section 1962(a)*

■ Plaintiff charges that Harris used income derived from its predicate acts of mail and wire fraud to acquire and establish an interest in the operation of a RICO enterprise,[7] in violation of Section 1962(a).[8]

---

6. Defendant urges the Court to dismiss the fraud claim in its entirety because plaintiff has not specifically alleged *how* it was injured by the alleged fraud. This argument also lacks merit. It is sufficient that Concord has alleged that it never would have provided financing to S & G under the agreed-upon terms had it known the facts allegedly misrepresented and concealed by Harris.

7. According to the complaint, the enterprise consisted of the design, manufacturing, marketing, and sale of printing press equipment and the procurement of financing for purchasers of said equipment. In other words, Harris itself was the RICO enterprise.

8. Section 1962(a) provides in pertinent part:

Defendant contends that plaintiff lacks standing to assert a Section 1962(a) claim because it has not alleged injury from Harris's purported *use* or *investment* of the income. Plaintiff counters that it need only allege injury as a result of the racketeering activity itself—that is, from the mail and wire fraud.

The Ninth Circuit explicitly reserved judgment on this very issue in *Reddy v. Litton Industries, Inc.*, 912 F.2d 291, 295–96 (9th Cir.1990).[9] In so doing, the court recognized that three of four circuit courts and a majority of district courts have agreed with defendant and required a Section 1962(a) plaintiff to show injury from the use or investment of racketeering income, rather than from the predicate acts alone. *Id.* at 296.[10]

In interpreting RICO, the Court must look first to the language of the statute itself. *Russello v. United States*, 464 U.S. 16, 20, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983). The Second, Third, and Tenth Circuits, which have required use or investment injury, have done just that, and their reasoning is quite persuasive. Section 1964(c) provides a civil remedy for "[a]ny person injured in his business or property *by reason of* a violation of section 1962." § 1964(c) (emphasis added). Therefore, the 1962(a) violation must be the cause of Concord's injury. *See, e.g., Ouaknine v. MacFarlane*, 897 F.2d 75, 82 (2d Cir.1990); *Rose v. Bartle*, 871 F.2d 331, 357–58 (3d Cir.1989); *Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1149 (10th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989). The plain language of Section 1962(a) indicates that it does not

prohibit the actual *receipt* of income derived from racketeering activity, but only the *use* or *investment* of such income. § 1962(a); *see also Ouaknine*, 897 F.2d at 82; *Rose*, 871 F.2d at 357–58; *Grider*, 868 F.2d at 1149. Thus, to seek a civil remedy under Sections 1962(a) and 1964(c), Concord must allege that it was injured "by reason of" Harris's use or investment of racketeering proceeds.

The reasoning of the minority of courts that have held to the contrary is unpersuasive. For example, citing the Supreme Court's decision in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Fourth Circuit held that a plaintiff need not allege use or investment injury. *Busby v. Crown Supply, Inc.*, 896 F.2d 833, 837–38 (4th Cir.1990). The reliance on *Sedima* by the Fourth Circuit and a minority of other courts is misplaced. In holding that a plaintiff need allege only the elements of a RICO violation and that it was injured by the predicate acts themselves, the Supreme Court was construing Section 1962(c), not 1962(a). *See Sedima*, 473 U.S. at 496–97, 105 S.Ct. at 3285–86. Whereas Section 1962(c) expressly prohibits persons from conducting a RICO enterprise through a pattern of racketeering activity, "the gravamen of the offense under Section 1962(a) is not the underlying racketeering activity itself, but the subsequent use and investment of proceeds obtained through the racketeering activity." *In re Rexplore, Inc. Sec. Litig.*, 685 F.Supp. 1132, 1141 (N.D.Cal.1988). Since participation in racketeering activity is the essence of a 1962(c) violation, it is no wonder that the Supreme Court refused to

---

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate of foreign commerce.

**9.** Because the Ninth Circuit expressly reserved judgment on this question in *Reddy*, the Court

rejects plaintiff's argument that the Ninth Circuit actually resolved the issue in *Wilcox v. First Interstate Bank*, 815 F.2d 522 (9th Cir.1987), which was decided before *Reddy*.

**10.** Significantly, the court also observed that the one court in this Circuit to adopt the minority position did so without the benefit of the Second, Third, and Tenth Circuit's opinions. *Reddy*, 912 F.2d at 296 n. 6 (citing *In re Nat'l Mortgage Equity Corp. Mortgage Pool Certificates Sec. Litig.*, 682 F.Supp. 1073 (C.D.Cal.), *appeal dismissed on other grounds*, 821 F.2d 1422 (9th Cir.1987)).

impose a racketeering injury requirement above and beyond the injury that resulted from the predicate acts themselves.

Further, what the Supreme Court rejected in *Sedima* was "an additional, amorphous 'racketeering injury' requirement." *Sedima*, 473 U.S. at 495, 105 S.Ct. at 3284. The Court expressly recognized that a RICO plaintiff has standing only if he has been injured in his business or property *"by the conduct constituting the violation."* *Id.* at 496, 105 S.Ct. at 3285 (emphasis added). In this case, the conduct constituting the violation of Section 1962(a) is the use or investment of racketeering proceeds, not the racketeering activity itself. *Ouaknine*, 897 F.2d at 83; *Grider*, 868 F.2d at 1150.

The policy of liberally construing RICO does not bestow upon courts carte blanche to ignore statutory language. This Court follows the leads of the majority of courts to address this issue and holds that Section 1962(a) requires a plaintiff to allege injury from the defendant's use or investment of racketeering income.

Plaintiff asserts that even if this Court adopts defendant's interpretation of Section 1962(a), Concord has standing because the complaint "when read in its entirety" alleges that Harris's investment and use of its unlawfully obtained funds directly injured Concord. The Court disagrees. Even the most strained reading of the complaint does not produce any allegation that defendant's use and investment of its alleged racketeering proceeds injured Concord. Further, plaintiff argues that defendant's ability to reinvest its ill-gotten gains kept it afloat, and thus market forces could not operate to force it to correct the press's defects. This "reinvestment injury" theory has already been rejected by at least one court as simply another way of stating that

the predicate acts of fraud caused plaintiff's injury. *See, e.g., Rexplore*, 685 F.Supp. at 1142.

### B. *Section 1962(b)*

■ Much the same analysis governs plaintiff's claim under Section 1962(b). Concord alleges that Harris acquired and maintained an interest in and control of the RICO enterprise through racketeering activities, in violation of Section 1962(b).[11] Defendant urges the Court to dismiss this claim because plaintiff has alleged injury only by reason of the alleged racketeering activities, and not by reason of defendant's acquisition of an interest in itself.

Again, Section 1964(c) provides a civil remedy for plaintiffs injured "by reason of" a violation of Section 1962. A violation of Section 1962(b) itself hinges on whether a defendant acquired or maintained an interest in or control of an enterprise. Therefore, to state a claim under Sections 1962(b) and 1964(c), a plaintiff must allege injury from the defendant's acquisition or control of an interest in a RICO enterprise. *Midwest Grinding Co. v. Spitz*, 716 F.Supp. 1087, 1090–91 (N.D.Ill.1989); *Airlines Reporting Corp. v. Barry*, 666 F.Supp. 1311, 1315 (D.Minn.1987).[12] A fair reading of the complaint reveals no such allegation.

### C. *Section 1962(d)*

■ Plaintiff alleges that defendant conspired with its employees and representatives to violate Sections 1962(a) and (b), in violation of Section 1962(d).[13] Defendant moves to dismiss this claim on the ground that a corporation cannot conspire with its own employees to violate RICO. The point is well-taken.

---

**11.** Section 1962(b) provides in relevant part: It shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which, affect, interstate or foreign commerce.

**12.** For example, an owner of an enterprise infiltrated as a result of racketeering activity would

have standing to sue because he was injured by the defendant's acquisition of control over his enterprise.

**13.** Section 1962(d) provides: "It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section."

A corporation and its officers cannot conspire with each other for purposes of a RICO violation. *Medallion TV Enterprises, Inc. v. SelecTV of California, Inc.*, 627 F.Supp. 1290, 1301 n. 7 (C.D.Cal.1986). Plaintiff appears to concede this (Memorandum in Opposition, at 17), but mysteriously argues that a corporation *can* conspire with its "employees and representatives." This is a distinction without a difference. Under common-law conspiracy rules, a corporation cannot conspire with itself or its employees because it can act only through its officers and employees. *Jagielski v. Package Machine Co.*, 489 F.Supp. 232, 233 (E.D.Pa.1980). The fact that the alleged conspiracy arises under RICO does not alter this result. *Gaudette v. Panos*, 650 F.Supp. 912, 913–14 (D.Mass.1987), *rev'd on other grounds*, 852 F.2d 30 (1st Cir. 1988). Further, alleging conspiracy with some unnamed representative is not tantamount to alleging that Harris is conspiring with another.

### D. *Mail and Wire Fraud*

■ Plaintiff's RICO claims are based on defendant's alleged predicate acts of mail and wire fraud. Defendant argues that plaintiff has failed to comply with Federal Rule of Civil Procedure 9(b)'s particularity requirements in setting forth the basis for this allegation. The Court agrees.

The Ninth Circuit has held that allegations of predicate acts under RICO must comply with Rule 9(b)'s specificity requirements. *Schreiber Distributing Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400–01 (9th Cir.1986). Plaintiff's mail and wire fraud allegations fall far short of the mark. Plaintiff alleges that defendant committed mail fraud by mailing correspondence, proposals, and agreements, including the recourse and indemnity agreements, that contained false representations designed to induce Concord to finance S & G's purchase of the press. Complaint, para. 41. Nowhere does the complaint designate this correspondence or the manner in which it was false. Moreover, although plaintiff argues in its memorandum that the indemnity and recourse agreements misrepresented that the press would be sold new, the complaint itself makes no mention of this representation.

Plaintiff's wire allegations are equally sparse. Not one specific wire communication is mentioned in the complaint. Incredibly, in its opposition memorandum plaintiff refers the Court to paragraph 8 of the complaint as a specific example of wire fraud. This paragraph, however, makes no mention of the use of the wires. Accordingly, if plaintiff wishes to amend its RICO claims under Sections 1962(a) and (b), it must also amend its mail and wire fraud allegations to comply with Rule 9(b).

### IV. Implied Indemnity (Count Four)

■ In its implied indemnity claim, plaintiff charges that if the allegations in the S & G complaint are found to be true, defendant should indemnify plaintiff for any damages and costs it incurs.[14] Defendant moves to dismiss this claim on the ground that if Concord were found liable to S & G, it would not be entitled to indemnity from Harris. Defendant correctly states the law.

A party may seek indemnity only when it is not personally at fault. J. Lee & B. Lindahl, *Modern Tort Law: Liability & Litigation* § 20.06 (Rev. ed. 1990). Thus "it follows that a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the [implied indemnity] doctrine." *McHam v. Whitney*, 143 Misc.2d 441, 540 N.Y.S.2d 416, 417 (Sup.Ct.1989). The S & G complaint alleged intentional fraud against Concord and conspiracy with Harris to intentionally defraud.[15] If the allegations in

**14.** S & G's claim against Concord has never been resolved, and S & G apparently has stopped pursuing it.

**15.** At the January 10, 1991 hearing, plaintiff's counsel insisted that S & G had sued Concord for negligence as well as for fraud, arguing that

Concord could be indemnified by Harris for its nonfraudulent acts. The Court has examined the Second Amended Complaint filed in the S & G action and finds that the only damage claim made against Concord was for conspiracy to defraud.

the S & G complaint are found to be true, Concord necessarily would be guilty of intentional wrongdoing. Hence its implied indemnity claim is barred as a matter of law.

### V. Breach of Warranty (Counts Seven, Eight, and Nine)

▇▇▇▇▇ Plaintiff alleges breach of express warranty, implied warranty of merchantability, and implied warranty of fitness. Defendant moves to dismiss each on the ground that Harris and Concord were not in privity. Each withstands the motion.

New York has long ago abolished its privity requirement with regard to express warranties. *Randy Knitwear, Inc. v. American Cyanamid Co.*, 11 N.Y.2d 5, 181 N.E.2d 399, 226 N.Y.S.2d 363 (1962). However, New York still requires privity of contract before a party may assert implied warranties against a manufacturer. *County of Westchester v. General Motors Corp.*, 555 F.Supp. 290, 294 (S.D.N.Y.1983). As discussed in connection with the negligent misrepresentation claim, the relationship between the parties was the "functional equivalent of privity." Therefore, plaintiff may maintain its warranty claims against defendant.

### VI. Breach of Third–Party Beneficiary Contract (Count Ten)

▇▇▇▇ Plaintiff sues for breach of a third-party beneficiary contract between defendant and S & G. Defendant challenges this claim on the ground that defendant and S & G must have *intended* that Concord benefit from the agreement at the time of contracting. Defendant's challenge is without merit because the complaint alleges that Harris's representations and warranties "were made for the benefit of Concord in that the Press was to serve as collateral to secure the Note." Complaint, para. 107. On a motion to dismiss, this Court is required to accept the allegations of the complaint as true.

Accordingly,

IT IS HEREBY ORDERED that:

(1) Defendant's motion to dismiss plaintiff's fraud claim is GRANTED in part and DENIED in part. The motion is granted with leave to amend as to all of plaintiff's allegations of misrepresentation, save for that regarding defendant's 1985 annual report. The motion is denied as to plaintiff's allegations of fraudulent concealment.

(2) Defendant's motion to dismiss plaintiff's negligent misrepresentation claim is GRANTED in part and DENIED in part. The motion is granted with leave to amend as to all of plaintiff's allegations of misrepresentation, save for that regarding defendant's 1985 annual report.

(3) Defendant's motion to dismiss plaintiff's RICO claims under 18 U.S.C. §§ 1962(a) & (b) is GRANTED with leave to amend. Its motion to dismiss plaintiff's claim under 18 U.S.C. § 1962(d) is GRANTED with prejudice.

(4) Defendant's motion to dismiss plaintiff's claim for implied indemnity is GRANTED with prejudice.

(5) Defendant's motion to dismiss plaintiff's claims for breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness, and breach of a third-party beneficiary contract is DENIED.

(6) If it chooses to file an amended complaint, plaintiff must do so within 20 days of the date of this Order. If it fails to amend within such period, its fraud, negligent misrepresentation, and remaining RICO claims will be deemed dismissed with prejudice.