SCHIAVONE CONSTRUCTION COMPANY et al., Respondents, v ELGOOD MAYO CORP. et al., Defendants, and TIMBERLAND EQUIPMENT LIMITED, Formerly Known as TIMBERLAND ELLICOTT LIMITED, Appellant. (And a Third-Party Action.)

First Department, June 16, 1981

#### APPEARANCES OF COUNSEL

*Raymond S. Jackson, Jr.*, of counsel *(Peter D. Raymond* with him on the brief; *Thacher, Proffitt & Wood*, attorneys), for appellant.

*Eugene Schaffel* of counsel *(Norman D. Alvy* and *John R. Casolaro* with him on the brief; *Buckley, Treacy, Schaffel, Mackey & Abbate*, attorneys), for respondents.

#### OPINION OF THE COURT

FEIN, J.

Plaintiff Schiavone Construction Company (Schiavone) has been granted an attachment of the assets of defendant

Timberland Equipment Limited (Timberland) pursuant to CPLR 6201 (subd 1). In sustaining the attachment, Special Term concluded that plaintiff had demonstrated the existence of a valid cause of action and that it is probable that the plaintiff will succeed on the merits. Plaintiff was granted leave to serve an amended complaint to allege in substance that by reason of defects in a truck hoist designed and manufactured by Timberland and sold by it to plaintiff's supplier Elgood Mayo Corp. (Elgood), plaintiff sustained damage. The truck hoist, designed to be used in connection with tunnel work undertaken by plaintiff in the East 63rd Street tunnel in New York City, allegedly would not operate because, among other things, the shaft was improper in design and in its fit to the drum, and the cable equalizer did not and could not fulfill the function for which it was intended.

The proposed amended complaint would plead a third cause of action based upon strict products liability in place of the present third cause of action.

Plaintiff purchased the truck hoist from Elgood, which entered into a contract with Timberland under which Timberland constructed the truck hoist purporting to meet the contract specifications. Pursuant to the contract, Timberland's name did not appear on any of the equipment, nor did it appear on the bills sent by Elgood to plaintiff.

Special Term ruled that under current New York law, no recovery could be had against Timberland on the theory of breach of warranty because there is no privity (*Martin v Dierck Equip. Co.*, 43 NY2d 583; *Victorson v Bock Laundry Mach. Co.*, 37 NY2d 395), and that no cause of action in negligence was stated because, in the absence of privity, it must be shown that the product is inherently dangerous and that damage to persons or property flowing from an accident has been sustained. It was ruled that mere economic loss occasioned by the failure of the product to perform could not ground a cause of action in negligence against the manufacturer by a remote purchaser (*Snyder Plumbing & Heating Corp. v Purcell*, 9 AD2d 505; *Steckmar Nat. Realty & Inv. Corp. v Case Co.*, 99 Misc 2d 212; *Trans World Airlines v Curtiss-Wright Corp.*, 1 Misc 2d 477, affd 2 AD2d 666).

However, Special Term concluded that the facts alleged were sufficient to state a cause of action in strict liability and granted leave to amend the complaint to plead such cause.

As Special Term observed, the closest case on its facts is *Dudley Constr. v Drott Mfg. Co.* (66 AD2d 368) granting the right to recover in strict liability for damages sustained in an action against the manufacturer of a crane which sustained physical damage and could not be used for its purpose because the bolts connecting the superstructure to the undercarriage had broken. The superstructure broke loose from its mounting and crashed to the ground along with the attached boom and load. In our case the hoist did not break. It simply would not work because its parts were improperly designed and inadequately attached to each other. Logic suggests that recovery should not be denied because of this difference between a machine which broke as in *Dudley (supra)* and one which did not work as in our case (see *Randy Knitwear v American Cyanamid Co.*, 11 NY2d 5, 15).

The dissenters conclude that liability may not attach because there is no legal or jural relationship between the plaintiff and Timberland. They note that Timberland had no contract with plaintiff and that this was a so-called "private" job in that Timberland's name was not to appear as the manufacturer of the equipment. The dissent concludes that an appropriate distinction may be made between damage resulting from physical injury to the crane itself by reason of defective parts as in *Dudley (supra)* and "economic damage" sustained in our case where the hoist would not work because of defective parts. We see no valid ground for such distinction.

The argument that there must be physical damage or personal injury before strict liability will be imposed is founded on the conclusion that strict liability is theoretically grounded in tort and that the "economic loss" sought to be recovered in our case is more nearly akin to contract damages for breach of warranty, requiring privity. However, on the facts of our case there is no need to make the

issue turn on such historical distinctions among the forms of action and their roots.

The dissent quotes at great length from the California case of *Seely v White Motor Co.* (63 Cal 2d 9) where liability was imposed in favor of a remote purchaser and user against the manufacturer, cast in damages for repair, damage and consequential economic loss sustained because the truck would not function properly and bounced so violently that it overturned. Although liability in favor of a remote purchaser was imposed on the basis of the manufacturer's express warranty, upon which ·the purchaser apparently did not rely, Chief Justice TRAYNOR, in widely quoted dicta, explained why under California law strict liability would not be imposed. It was his view, relied upon by the dissent here, that strict liability is purely a tort doctrine designed to deal with "the distinct problem of physical injuries" as distinguished from the law of warranty which is primarily aimed at controlling commercial aspects of such transactions. In an extensive rationale justifying the distinction between tort recovery for physical injuries and warranty recovery for economic loss, Chief Justice TRAYNOR suggested it rested upon an understanding of the economic responsibility a manufacturer must undertake in distributing his products. The dissent here appears to agree with his conclusion that there should be no right to recover from one not in privity with the plaintiff unless the manufacturer agrees in advance that the product is designed to meet the consumer's demands. Overlooked is the conclusion that by that ·standard recovery should be permitted here where it is alleged that Timberland manufactured the equipment to meet plaintiff's needs.

An exposition similar to that in *Seely (supra)* is to be found in *Jones & Laughlin Steel Corp. v Johns-Manville Sales Corp.* (626 F2d 280, 287-289) also relied upon in the dissent, where it is said that the rationale justifying strict liability in personal injury situations is not well suited to claims alleging only economic loss resulting from the failure of the product to perform, a matter which could and should have been covered by warranty. Theorizing that a lower purchase price for the product may result from the lack of warranty, the case concludes that no claim for economic loss

is viable in the absence of privity. This economic argument, also advanced by the dissent, is of dubious validity. If there is a cause of action by the ultimate purchaser against his supplier premised on a breach of warranty, surely the supplier will have a cause of action against the manufacturer. This is the remedy suggested by the dissent. However, under such circumstances the damages will be the same and there will be a circuity of actions increasing the costs and time for recovery. There is no warrant for the distinction. As stated in *Randy Knitwear* (11 NY2d, at p 13) : "Thus, if the consumer or ultimate business user sues and recovers, for breach of warranty, from his immediate seller and if the latter, in turn, sues and recovers against his supplier in recoupment of his damages and costs, eventually, after several separate actions by those in the chain of distribution, the manufacturer may finally be obliged 'to shoulder the responsibility which should have been his in the first instance.' "

There is no reason why New York need follow either California or the Federal courts in attempting to bar liability on the theory that strict liability is grounded in tort and not in warranty. The conclusion in *Dudley Constr. v Drott Mfg. Co.* (66 AD2d 368, *supra*) warrants affirmance here. It is noted that the crane in that case was purchased by the ultimate consumer "as is". The hoist here was manufactured for the job at hand.

As stated in *Codling v Paglia* (32 NY2d 330) at the outset of the opinion (p 335) : "We hold that today the manufacturer of a defective product may be held liable to an innocent bystander, without proof of negligence, for damages sustained in consequence of the defect." The court proceeded to lay down the applicable rule (p 342) : "We accordingly hold that, under a doctrine of strict products liability, the manufacturer of a defective product is liable to any person injured or damaged if the defect was a substantial factor in bringing about his injury or damages; provided: (1) that at the time of the occurrence the product is being used (whether by the person injured or damaged or by a third person) for the purpose and in the manner normally intended, (2) that if the person injured or damaged

is himself the user of the product he would not by the exercise of reasonable care have both discovered the defect and perceived its danger, and (3) that by the exercise of reasonable care the person injured or damaged would not otherwise have averted his injury or damages."

By that standard it is appropriate to fasten strict liability upon Timberland even though there is no personal injury as in *Codling (supra)* and no physical breaking of the equipment as in *Dudley (supra)*. We have here a relatively simple case of a complicated piece of equipment that will not work. Surely the manufacturer of such a piece of equipment should be held to have contemplated that his equipment would be used for the purpose for which it was designed. Its failure to do so should impose liability upon him in favor of the person injured.

The situation is unlike the New Jersey case which seems to trouble the dissent here, as it did the California court in *Seely* (63 Cal 2d 9, *supra*). In that case, *Santor v A & M Karagheusian* (44 NJ 52) the manufacturer was held liable to the ultimate consumer where a rug, because of a defect in design or manufacture, did not meet the requirements of the purchaser. It had a plainly visible line running across the design. Plaintiff was allowed to recover the difference between the price paid for the carpeting, viz., its represented value without the flaw, and the market value of the carpeting with the flaw. In a careful opinion the court imposed liability on the manufacturer, relying heavily on the New York case of *Randy Knitwear v American Cyanamid Co.* (11 NY2d, at p 15) where it was stated: "We perceive no warrant for holding—as the appellant urges—that strict liability should not here be imposed because the defect involved, fabric shrinkage, is not likely to cause personal harm or injury."

In *Santor (supra)* the court noted that although the carpeting was usable, it did not serve the purpose for which intended. In *Randy Knitwear (supra)* the fabric shrank. In our case the truck and hoist assembly, as in *Dudley (supra)* could not be used at all.

To assert that we here speak of economic loss or the loss of the benefit of the bargain, as in *Santor (supra)*, is to

ignore reality. It is plain enough that a piece of complicated equipment which will not work is far different than a rug with a defect in design. It is palpable that a truck and hoist assembly which will not work is more nearly akin to a crane which collapses. It is notable that in all of the cited cases, *Santor, Seely, Dudley, Randy Knitwear* and *Codling (supra)* the courts were astute to find a remedy against the manufacturer. No reason appears why we should do less.

It is time that the vestiges of the citadel of privity not be relied upon to bar the courthouse doors to a suit against a manufacturer by a remote purchaser of his equipment who is unable, because of its inherent defects, to use it.

Accordingly, the order, Supreme Court, New York County (KASSAL, J.), entered October 31, 1980, granting plaintiff leave to serve an amended complaint alleging a cause of action in strict liability and granting plaintiff's motion for an attachment of Timberland's assets, should be affirmed with costs.

SILVERMAN, J. (dissenting). We would reverse the order appealed from and deny the attachment in favor of plaintiffs against defendant-appellant Timberland Equipment Limited.

Plaintiffs, engaged in subway construction, ordered and purchased a "vehicular truck hoist" and associated equipment from defendant Elgood. Elgood ordered either the hoist or a large part of it—we will assume, the whole thing—from defendant Timberland which manufactured the hoist, presumably in accordance with Elgood's specifications, and sold and delivered the hoist to Elgood. There was no contractual relation between plaintiffs and Timberland. The contract between Timberland and Elgood provided that this would be a private label job to be manufactured under Elgood's label and that Timberland would not represent itself by label or other forms as manufacturer of the equipment except where specifically authorized to do so by Elgood. Plaintiffs allege that the truck hoist malfunctioned, and as a result plaintiffs suffered damages consisting of the cost of repairs to put the equipment into reasonably operable condition, and other economic loss due

to downtime, loss of production, additional labor incurred, and equipment rentals. Plaintiffs sued both Elgood and Timberland for these damages. Special Term has held that plaintiffs cannot recover against Timberland on an implied warranty because there was no privity between plaintiffs and Timberland and apparently that no cause of action lies against Timberland on the theory of negligence. Special Term nevertheless permitted plaintiffs to amend their complaint to allege a cause of action against Timberland based upon strict products liability, and on this theory granted plaintiffs an attachment against Timberland.

An order of attachment may be granted in certain situations where the plaintiff "would be entitled * * * to a money judgment" (CPLR 6201). The CPLR further requires that the "plaintiff shall show * * * that there is a cause of action, that it is probable that the plaintiff will succeed on the merits" (CPLR 6212, subd [a]).

In our view, plaintiffs have failed to meet this requirement as a matter of law; they have failed to show that there is a cause of action against Timberland; a fortiori, they have failed to show "that it is probable that the plaintiff will succeed on the merits."

The issue is whether New York will permit a cause of action based on strict products liability as against a remote manufacturer who made no representations to plaintiffs, who has no privity of contract with plaintiffs, and where the only claim by plaintiffs is that the product failed to function properly, resulting in economic loss to plaintiffs. We must distinguish between two types of cases: (a) Where the product is unduly dangerous so that the defect causes physical damage, presumably due to an accident, to either persons or property. (b) Where the product, although not itself unduly dangerous, does not function properly, resulting in economic loss other than physical damage to persons or property (and where the product is not sold under the manufacturer's trade name or label, or under a warranty, by advertisements or otherwise, that may fairly be said to run from the manufacturer to the ultimate user or purchaser).

It is settled law in New York that a cause of action based on strict liability lies in the first situation *(Codling v Paglia,*

32 NY2d 330). But what we are here presented with is the second situation; the product is not unduly dangerous and all that is claimed is that the equipment did not function properly thus causing the owner to incur costs of repair and consequential economic loss.

We think the economic ramifications of permitting a cause of action against the manufacturer in the latter situation are so extensive and unforeseeable that it is better for the courts not to extend strict products liability to this area, leaving the owner of the product to its remedy based on its contract with the seller, and likewise leaving the seller to its remedies against the person from whom it bought the equipment based upon the contract between those parties. If there is to be so radical an extension of liability as to hold remote manufacturers liable to users, in the absence of representation or contract, for the failure of equipment to function well, it should be the Legislature that makes it after investigation of economic ramifications, which is beyond the ability of a court to do in the context of a particular case. There is room in the market for goods of varying quality, and if the purchaser buys goods which turn out to be below its expectations, its remedy should be against the person from whom it bought the goods, based upon the contract with that person.

The issue here involved has been considered by a number of other courts and we think the better view is that no such cause of action will lie.

The leading case permitting such cause of action is *Santor v A & M Karagheusian* (44 NJ 52). In that case, a purchaser of defective carpeting from a retailer who had purchased from a wholly owned distributor of a manufacturer was permitted to recover against the manufacturer on the strict liability theory even though there was no privity of contract, and even though plaintiff's damage was limited to the loss of value of the carpeting. The carpeting was sold as Grade No. 1 and was advertised on a nationwide scale by the manufacturer as "Gulistan". The carpeting turned out to be defective; when laid it showed an unusual line in it which became worse with time.

But a contrary and much more widely accepted view was

adopted by the Supreme Court of California in *Seely v White Motor Co.* (63 Cal 2d 9). In that case White Motor Co., the manufacturer, was held liable to a remote purchaser and user, for repair, damage and consequential economic loss, due to the fact that the truck would not function properly, bouncing violently so that it finally overturned. The liability was imposed on the basis of the manufacturer's express warranty. But in the course of discussing the case, Chief Justice TRAYNOR pointed out why strict liability would not apply in the absence of that warranty, saying (pp 15, 16, 18):

"The law of sales has been carefully articulated to govern the economic relations between suppliers and consumers of goods.

"The history of the doctrine of strict liability in tort indicates that it was designed, not to undermine the warranty provisions of the sales act or of the Uniform Commercial Code but, rather, to govern the distinct problem of physical injuries * * *

"The law of warranty 'grew as a branch of the law of commercial transactions and was primarily aimed at controlling the commercial aspects of these transactions.' (See James, *Products Liability*, 34 Tex. L. Rev. 192; Llewellyn, *On Warranty of Quality, and Society*, 36 Colum. L.Rev. 699, 37 Colum. L.Rev. 341.)

"Although the rules of warranty frustrate rational compensation for physical injury, they function well in a commercial setting. (See Com. Code, § 2719; Prosser * * * 69 Yale L.J. 1099, 1130, 1133.) These rules determine the quality of the product the manufacturer promises and thereby determine the quality he must deliver * * *

"The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the 'luck' of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks

of harm. *He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands.* [Italics ours.] A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will. Even in actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone. * * * The Restatement of Torts similarly limits strict liability to physical harm to person or property. (Rest. 2d Torts (Tent. Draft No. 10), § 402 A.)"

In a review of the authorities on this subject, the Third Circuit Court of Appeals stated in *Jones & Laughlin Steel Corp. v Johns-Manville Sales Corp.* (626 F2d 280, 287-289) that:

"In cases decided subsequently to *Santor* and *Seely*, a large majority of courts following *Seely* have held that economic losses are not recoverable under claims sounding in tort law * * *

"Dean Prosser even went so far as to assert: 'There can be no doubt that the seller's liability for negligence covers any kind of physical harm, including not only personal injuries, but also property damage to the defective chattel itself, as where an automobile is wrecked by reason of its own bad brakes, as well as damage to any other property in the vicinity. But where there is no accident, and no physical damage, and the only loss is a pecuniary one, through loss of the value or use of the thing sold, or the cost of repairing it, the courts have adhered to the rule ... that purely economic interests are not entitled to protection against mere negligence, and so have denied the recovery.' Disallowance of tort claims for economic losses accords with the provisions of the Restatement (Second) of Torts that discuss a manufacturer's liability for negligence and for strict liability * * * Similarly, §§ 402A and 402B, which establish respectively strict liability for defective products and misrepresentation in the sale of products,

apply only where the product or misrepresentation causes physical harm to the user of the product. Nowhere in the accompanying commentary or illustrations do the reporters of the Restatement indicate that the doctrine of strict liability covers economic losses * * *

"The rationale behind strict liability in personal injury situations is not well-suited to claims alleging only economic loss. Economic loss results from the failure of the product to perform to the level expected by the buyer and the seller * * * Thus, economic loss is almost always incurred by the owner of the product, not by persons who merely use it or come into contact with it. The original purchaser, particularly a large company such as Jones & Laughlin, can protect itself against the risk of unsatisfactory performance by bargaining for a warranty. Alternatively, it may choose to forego warranty protection in favor of a lower purchase price for the product. Subsequent purchasers may do likewise in bargaining over the price of the product. In any event, because persons other than the owner of the product will not incur economic losses resulting from the product's poor performance, the costs associated with economic loss will likely be reflected in the price of the product. There accordingly would seem to be no need to internalize these costs through a non-price mechanism such as strict liability."

As indicated by the Third Circuit Court of Appeals, this is also the view taken in the Restatement of Torts. Section 402A of the Restatement of Torts, Second, limits the rule of strict liability for the sale of products as follows: "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if * * *". The product must be "unreasonably dangerous" and the liability is for "physical harm."

The one New York case on the subject, *Dudley Constr. v Drott Mfg. Co.* (66 AD2d 368 [4th Dept]) apparently adopts the *Seely* position. In that case, a crane suffered a structural failure because certain bolts connecting the superstructure to the undercarriage broke. The superstruc-

ture came off its mounting and crashed to the ground along with the attached boom and load. The court held the manufacturer liable on a strict liability theory but made clear that it was doing so only consistently with *Seely* and that it was adopting the restrictive *Seely* view. Thus the court said (pp 372-373) : "In reaching this decision, contrary to appellants' assertions, we need not embrace a rule that would allow recovery in manufacturer's liability cases where the essential claim is that the plaintiff has been deprived of the benefit of his bargain as in *Santor v A & M Karagheusian, Inc.* (44 NJ 52, *supra)* * * * In *Santor* (unlike the case at bar) there was no physical injury and it could not be claimed that defendant had committed the tort of marketing a product which contained a defect that made it, when properly used, *dangerous* to life or limb or property. [Italics ours.] The total damages in *Santor* were measured by the difference between the price paid for the carpeting (i.e., its represented value without the flaw) and the market value of the carpeting with the flaw. Here, by contrast, the damages measured solely by the difference in value of the product with and without the defective parts (i.e., due to the defective bolts exclusive of the physical damage sustained in the crane's collapse) are insignificant. Rather, the damages sought here flow proximately from defendants' breach of its legal duty in manufacturing and marketing a large and complex machine containing a defect in a key structural part which gave way resulting in physical damages to extensive portions of the machine which were not defective and which would have been unharmed but for the crane's collapse. The Supreme Court in California, although recognizing that strict products liability in tort may properly be applied to physical injuries to the product itself of the type suffered here, would not have applied the doctrine to plaintiff's claim in *Santor (supra)* that the carpeting did not match his economic expectations." After quoting extensively from the *Seely* opinion, the court said (p 374) : "Our holding here—involving as it does damages resulting from physical injuries to the crane incurred in an accident caused by the defective parts—is consistent with the more restrictive and, we think, the better view. of

the California court in *Seely v White Motor Co.* (63 Cal 2d 9, *supra*)."

Even though both cases involved construction equipment, we think the present case is substantially different on its facts from the *Dudley* case, and that consistently with the views expressed both by the Supreme Court of California in *Seely (supra)* and the Appellate Division, Fourth Department, in *Dudley (supra)* and what we think is the better rule, plaintiffs do not have a cause of action in strict liability against Timberland, and thus it is not "probable that [plaintiffs] will succeed on the merits". (CPLR 6212, subd [a].) Accordingly, the attachment should not have been granted.

There has not been presented to us on this appeal, and thus we express no views on, the dispute as between Elgood and Timberland.

ROSS and MARKEWICH, JJ., concur with FEIN, J.; SULLIVAN, J. P., and SILVERMAN, J., dissent in an opinion by SILVERMAN, J.

Order, Supreme Court, New York County, entered on October 30, 1980, as amended October 31, 1980, affirmed. Respondents shall recover of appellant $75 costs and disbursements of this appeal.