COUNTY OF WESTCHESTER and Liberty Lines Transit Inc., Plaintiffs,

v.

GENERAL MOTORS CORPORATION, Defendant.

No. 82 Civ. 4543–CLB.

United States District Court, S.D. New York.

Jan. 19, 1983.

Thomas P. O'Callaghan, White Plains, N.Y., for plaintiff County of Westchester.

Marc E. Grossman, White Plains, N.Y., for plaintiff Liberty Lines Transit, Inc.

Joel Harris, Weil, Gotshal & Magnes, New York City, for defendant.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Pursuant to Rule 12(b)(6), F.R.Civ.P., defendant General Motors Corporation ("GM") moves in this diversity case to dismiss the entire complaint of Liberty Lines Transit, Inc. ("Liberty"), and so much of the complaint of the County of Westchester ("County") as asserts claims arising under New York State law for negligence, strict products liability and breach of implied warranty. The motion is based on failure to state a claim upon which relief can be granted.

This dispute arises out of the purchase by the County of one hundred five (105) "RTS 2, Model 03" buses from GM, eighty-six (86) of which buses were operated by Liberty pursuant to a carrier lease agreement with the County. Under this agreement Liberty uses the vehicles principally to provide public street transportation throughout a substantial portion of Westchester County where it possesses certificates of public convenience and necessity. The remaining buses are on lease to various other smaller common carriers.

Plaintiffs allege that as a result of defective design and redesign of the buses' air conditioning system by GM, the system has failed repeatedly, causing substantial property damage to the air conditioning condensers, a nondefective component of the air conditioning system. In addition, plaintiffs allege that they have incurred increased maintenance and repair costs, operating losses and lost profits.

Essentially, plaintiffs base their claims on improper placement of the air conditioning system by GM, in its design and manufacture of these vehicles. That system was placed in the engine compartment. In all its previous models, GM had placed the air conditioning on the top rear of the bus. Plaintiffs allege that the new location prevented the efficient cleaning of the outside of the condensers, causing the system to fail continually.

In an effort to cure this perceived problem, GM redesigned the system twice at its own expense, without conceding liability. The initial modification consisted of a retrofit which allowed the condensers to swing out of the engine compartment to facilitate their cleaning. However, plaintiffs allege that this change increased the adverse effect of engine vibrations upon the condensers, causing them to crack from metal fatigue. In an effort to solve this new difficulty, GM installed a second retrofit, placing a picture frame type device around the swing out condensers. Plaintiffs allege that this remedial measure has been ineffective and that the condensers continue to crack.

As a result, the plaintiffs contend that the cracked condensers must now be replaced in large numbers, and the entire air conditioning system will have to be relocated on the top rear of the bus as it was on prior models.

GM has recommended such a relocation, but insists plaintiffs must pay for it. GM also denies that plaintiffs have incurred any property damage and denies that Liberty has any enforceable rights against it. GM asserts that despite the failure of the air conditioning system, the buses are still merchantable and fit for the particular purpose for which they were intended.

GM now seeks by motion to dismiss the plaintiffs' negligence and products liability claims on the grounds that plaintiffs' complaint fails to plead the requisite property damage necessary to support claims for negligence and strict liability under New York law.

■ These legal theories of negligent design and strict products liability were designed by the New York courts to compensate persons for tortious injury to persons or property resulting from badly made products. These theories may not be asserted solely to enforce contractual rights or expectations, nor merely to recover economic loss. *Hole v. General Motors Corporation,* 83 A.D.2d 715, 442 N.Y.S.2d 638 (3rd Dept.1981); *Martin v. Julius Dierck Equipment Co.,* 43 N.Y.2d 583, 403 N.Y.S.2d 185, 374 N.E.2d 97 (1978).

■■ Plaintiffs here seek essentially to recover from GM economic damages allegedly incurred as a result of the defective air conditioning system of the buses. The alleged property damage to the air conditioning condensers caused by the negligent design, is insufficient to support claims founded on negligence or strict products liability under New York law. To prevail on such a claim, New York requires that the alleged defective product cause physical injury or physical damage to unrelated property or to a portion of the defective property itself which is unrelated to the inherent nature of the alleged defect. See *Schiavone Construction Co. v. Elgood Mayo Corp.,* 81 A.D.2d 221, 439 N.Y.S.2d 933, *rev'd* 56 N.Y.2d 667, 451 N.Y.S.2d 720, 436 N.E.2d 1322 (1982) reversing upon dissenting opinion below, 81 A.D.2d 221, 227–34, 439 N.Y.S.2d 933; *Dudley Construction Inc., v. Drott Manufacturing Co.,* 66 A.D.2d 368, 412 N.Y.S.2d 512 (4th Dept.1979).

In this case, the condenser, the article damaged, is a primary component of the air conditioning system, alleged to be defectively designed or made. Such property damage cannot support a claim for damages

for negligence or strict products liability under New York law.

Accordingly, so much of the within motion as seeks to dismiss the plaintiffs' First and Third claims, based on theories of negligence and strict products liability for property damage is granted. With respect to these claims, plaintiffs' complaint fails to state a claim upon which relief can be granted.

■ Insofar as the within motion presents issues with respect to the County's claim based on the theory of breach of implied warranty, the motion is disposed of as follows: So much of this motion as seeks to dismiss the County's Second claim, based on an alleged breach of the implied warranties of merchantability and fitness for use is denied. This claim states a claim upon which relief can be granted. Pursuant to U.C.C. §§ 2–314 and 2–315, the implied warranties of merchantability and fitness for use are available to a purchaser of goods. General Motors concedes that it is a merchant, as defined in U.C.C. § 2–104, and that the aforementioned sections of the U.C.C. apply to this dispute.

■ The trier of fact may find that a bus which is so designed and constructed that the air conditioning system is doomed to fail, and in which the windows are also so designed and constructed as these were, that they cannot be opened to let in the outside air, is not a vehicle which is reasonably fit for the purpose intended, namely to carry passengers on trips in summertime in the Westchester County communities, where the ambient temperature occasionally rises as high as 100 degrees Fahrenheit. The trier of fact can also find that a bus with sealed windows in which the air conditioning system is so designed that it is doomed to fail after a relatively brief period of operation, is not merchantable.

The Court assumes that the proof at trial will show that the defendant knew the general locations in which the vehicles would be operated, and knew or should have known of the condition of the local highways and the type of service to be rendered.[1]

■ We now consider the claims of Liberty. Based upon the undisputed factual presentations submitted to the Court with respect to this motion, the Court understands that the County purchased the buses from GM with the intention of leasing them to Liberty and other common carriers similarly situated, and that this intention was known to GM at the time of the sale. In addition, the Court notes that Liberty acted as a consultant to the County in the course of the negotiations leading up to the sale, and that this fact was also known to GM.

These negotiations culminated in a written contract of sale between the County and GM dated October 18, 1978. There is no showing that Liberty or any other bus operator in Westchester County was made a party to this agreement or granted any rights thereunder. The parties before the Court are and were represented by skilled men of business and public officials. All parties had the aid and counsel of attorneys available to them. Neither Liberty nor the County stands in the posture of an ordinary retail consumer of the manufactured products of GM who buys from a dealer on seller's "take it or leave it" terms.

The Court concludes that these knowledgeable parties, aided by attorneys of their choice, did not intend to create any contract rights in favor of Liberty against GM. Had the parties intended to do so, it would have been most simple indeed to have made Liberty (and the other leasing common carriers) a party to the purchase agreement, or to have stated therein that the contract was being made for the benefit of Liberty and the other bus operators as third-party beneficiaries. See *Uniflex, Inc. v. Olivetti Corp. of America,* 86 A.D.2d 538, 445 N.Y.S.2d 993 (1st Dept.1982).

---

1. The foregoing views are expressed by this Court in the context of a motion essentially directed to the face of the pleadings, amplified to some degree by other documents submitted.

Whether proof at trial will be sufficient to sustain any or all of the claims is not a matter with which the Court is presently concerned.

Liberty does not allege, nor does the Court perceive, that Liberty is a third-party donee beneficiary of the contract under New York law. Upon a careful examination of the circumstances surrounding the execution of the contract, as well as the contract itself, the Court is compelled to conclude that neither the County nor GM intended to confer any benefit on Liberty or the other bus operators under the contract between the County and GM. See *American Electric Power Co. v. Westinghouse Electric Corp.,* 418 F.Supp. 435 (S.D. N.Y.1976); *Salzman v. Holiday Inns, Inc.,* 48 A.D.2d 258, 369 N.Y.S.2d 238 (4th Dept. 1973); *Snyder Plumbing and Heating Corp. v. Purcell,* 9 A.D.2d 505, 195 N.Y.S.2d 780 (1st Dept.1960); *Cutler v. Hartford Life Ins. Co.,* 22 N.Y.2d 245, 292 N.Y.S.2d 430, 239 N.E.2d 361 (1968).

■ The Court is also not persuaded that Liberty's separate and subsequent lease agreement with the County assigns to it the right to enforce express warranties running from GM to the County against GM. Paragraph 31 of the lease agreement states:

"31. WARRANTY: The carrier [Liberty] shall report to the County and manufacturer, in writing, each and every defect in new Equipment to insure maximum benefit under the warranty. The Carrier shall in no way jeopardize the warranty on the new Equipment, and will make the Equipment available to the sales or service representatives of the manufacturer upon request. The Carrier shall execute, if necessary, an agreement with the manufacturer to provide labor for warranty service at the manufacturer's expense. The Carrier shall at all times comply with manufacturer's recommendation for the maintenance of Equipment during the period of warranty." (Affidavit of Joel B. Harris, sworn to September 28, 1982, Exhibit A).

This provision does nothing more than authorize GM and Liberty to enter into a warranty service contract. Based on the papers submitted to the Court in opposition to this motion, it appears that GM and Liberty have entered into such an arrangement, whereby Liberty performs repair and maintenance work on the buses and submits to GM an "Application for Adjustment" or repair bill, which describes the nature of the repair, the parts replaced, the labor required, and the total cost of the work. Similar practices are quite common where users have their own repair facilities, since it would be cheaper and better to do so than to send the vehicles to the seller for repair.

Based on an examination of the lease agreement, the Court declines to find that the express warranties were assigned to or made for the benefit of Liberty. To the extent that GM, following delivery of the vehicles, by practice or express agreement with Liberty had authorized payment of any particular work order, such a claim for work, labor and services would be valid and separately enforceable. If there are outstanding any such work orders for warranty repair work, pursuant to any agreement with GM, or done with GM's prior authorization or upon subsequent ratification, this determination does not bar such claims. Any such claims may be asserted in an amended pleading by Liberty which may be filed herein within twenty (20) days, or elsewhere within the time permitted by the applicable statute of limitations.

■ Liberty fails to state a claim for breach of implied warranty. Under New York law, absent privity of contract, a purchaser cannot recover mere economic loss against a manufacturer under a theory of breach of implied warranty. *Hole v. General Motors, supra; Fischer v. Graco Inc.,* 81 A.D.2d 209, 440 N.Y.S.2d 380 (3rd Dept. 1981). Here, Liberty is not in privity with GM, nor does it fall within any exception heretofore created by the judicial assault on the citadel of privity. *Ultramares Corp. v. Touche,* 255 N.Y. 170, 180, 174 N.E. 441 (1931); See *Randy Knitwear v. American Cyanamid Co.,* 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399 (1982) and *Uniflex, Inc. v. Olivetti Corp. of America, supra.*

Liberty's reliance on *Uniflex, supra,* is misplaced. In *Uniflex,* a lessee of allegedly defective computer equipment brought an action for breach of express and implied

warranties against the remote computer manufacturer. Although the lessor had disclaimed all warranties in its lease with the lessee, the purchase order entered into between the lessor and the manufacturer expressly extended to the lessee the right to enforce against the manufacturer all warranties running from the manufacturer to the lessor. This is factually equivalent to privity, placing the lessee in the position of a third-party beneficiary. In the instant case, no such writing exists. Liberty is neither a third-party beneficiary under New York law, nor has it such privity of contract with GM which would permit it to assert claims for breach of warranty in its own behalf.

Liberty has stated on oral argument and in its moving papers that it has expended its own funds in attempting to service or correct parts of the buses which were inoperable because of the alleged breaches of warranty and/or unmerchantability, which are the basis of the complaint of plaintiff County of Westchester. Since the vehicles are the property of the County, the Court believes that these items of damage, if reasonably and necessarily incurred because of a breach of contract by GM, will be recoverable by the County of Westchester in this action, and that the County would be required to reimburse Liberty and/or hold the funds so recovered under a constructive trust for the benefit of the entity which actually made the attempts to correct the defects.

Liberty and the County are free to agree with each other with respect to this matter, and if no agreement can be reached, Liberty if so advised, may file a cross-complaint against County of Westchester, seeking relief from any unjust enrichment which may accrue if the County prevails for money damages in this action with respect to defective equipment which Liberty has corrected at its own expense by reason of its own obligation to the County as a lessee.

So much of the motion as seeks to dismiss the entire complaint of Liberty and so much of the County's claims as are based on the theories of negligence and strict products liability is granted. So much of the motion as seeks to dismiss the County's claim based on breach of implied warranty is denied. The Court declines at this time to make the finding contemplated by Rule 54(b), F.R. Civ.P.

This case has been pending since July 13, 1982 and is apparently not yet ready for trial. Counsel shall confer together at their earliest convenience and shall arrange a mutually satisfactory schedule for completion of pre-trial discovery which will permit this case to be ready for trial within a reasonable time and no later than May 2, 1983. Once prepared such a schedule shall be adhered to unless modified by order of the Court.

A final pre-trial conference of counsel will be held by the Court on May 2, 1983 at 9:30 A.M.

So Ordered.