Stephen W. BUTLER and Rebekah O. Butler, Plaintiffs-Appellants,

v.

PITTWAY CORPORATION, Defendant-Appellee.

No. 1047, Docket 85–7092.

United States Court of Appeals, Second Circuit.

Argued April 19, 1985.

Decided Aug. 2, 1985.

**8**

Alexander Geiger, Rochester, New York City (David Rothenberg, Geiger and Rothenberg, of counsel), for plaintiffs-appellants.

Donald W. O'Brien, Jr., Rochester, New York City (Woods, Oviatt, Gilman, Sturman & Clarke), for defendant-appellee.

Before OAKES, MESKILL and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

This is an appeal from an order and judgment of the United States District Court for the Western District of New York, Michael A. Telesca, *Judge*, dated January 30, 1985, granting appellee's motion for partial summary judgment on appellants' first claim for property damage and dismissing *sua sponte* appellants' second and third claims for personal injuries and loss of consortium as derivative of the first cause of action. For the reasons set forth below, we reverse and remand as to all three causes of action.

## BACKGROUND

In June 1979, appellant Stephen Butler purchased from a third party two First Alert smoke detectors that had been manufactured by appellee Pittway Corporation (Pittway). Butler testified that he installed the detectors in his home, one downstairs and one upstairs, according to the manufacturer's instructions and tested the units periodically after installation. On the night of August 7, 1981, a fire broke out in the Butler home. Awakened by the smell of smoke in their bedroom upstairs, Butler and his wife alerted their children and the family fled the house. Stephen Butler then telephoned the fire department; it is alleged that it was only after the firemen had arrived and entered the house that the smoke detectors sounded their alarms. There is some evidence which suggests that the fire may have resulted from the spontaneous combustion of linseed oil rags kept in the drawer of a workbench on the ground floor of the house. It is not contended that the smoke detectors in any way caused the fire, rather appellants claim that the failure of the detectors to sound a timely alarm aggravated the extent of the damage sustained.

Appellants commenced a strict liability action in state court alleging that the smoke detectors manufactured by appellee Pittway were defective, and that because of this defect the detectors failed to sound an alarm in a timely fashion, thus enhancing the damage to the Butlers' home. In

addition, Stephen Butler alleges that he sustained psychological injuries that in turn led to physical problems. Mrs. Butler claims that as a result of her husband's injuries, she was deprived of his society and services and seeks to recover damages accordingly.

Appellee Pittway removed the case to the federal district court for the Western District of New York on the basis of diversity. Following discovery, Pittway moved for partial summary judgment on appellants' first claim for property damage arguing that the losses sustained were "economic losses" and therefore were not recoverable in a tort action.

Judge Telesca granted appellee's motion for partial summary judgment holding that appellants' property damage claim was for economic loss and was not compensable in tort. The court came to this conclusion because the detectors had not caused the fire; they had only failed to "perform as promised." In addition, the court ruled *sua sponte* that the personal injury and loss of consortium claims were derivative of the property damage claim. Thus, the entire action was dismissed with prejudice.

Upon review, we hold that the district court erred in characterizing appellants' losses solely as economic and in dismissing the second and third causes of action as derivative of the first claim. Consequently, we reverse and remand.

### DISCUSSION

This case falls into a gray area between tort and contract law that has never been fully resolved. It is undisputed that New York law governs in this diversity case; thus, we must predict how the New York Court of Appeals would decide the issues presented.

█ Under the doctrine adopted by the New York Court of Appeals in *Schiavone Construction Co. v. Elgood Mayo Corp.*, 56 N.Y.2d 667, 669, 451 N.Y.S.2d 720, 721, 436 N.E.2d 1322, 1323 (1982), set forth in the lower court's dissenting opinion by Judge Silverman, 81 A.D.2d 221, 227–34, 439 N.Y.S.2d 933, 937–41 (1st Dep't 1981), it is well settled that a plaintiff in New York is relegated to contractual remedies and cannot maintain a tort action when a "product, although not itself unduly dangerous, does not function properly, resulting in economic loss other than physical dmage to persons or property." *Id.* at 228, 439 N.Y.S.2d at 937. However, the dissent distinguished those cases for which recovery in tort might be sought, namely: "[w]here the product is unduly dangerous so that the defect causes physical damage, presumably due to an accident, to either persons or property." *Id.*, 439 N.Y.S.2d at 937. The issue presented herein is whether damages aggravated by a defective smoke detector are recoverable in a products liability action or whether these damages are solely economic losses recoverable only in contract.

█ The district court focused on the causation element in ruling that appellants could not maintain their strict liability actions. According to the district court "the most that plaintiffs might prove is that they suffered substantial losses because the fire detector 'did not perform as promised'—not because it *caused* any accident which would not have occurred otherwise." *Butler v. Pittway Corp.*, No. 82–566T, slip op. at 3 (W.D.N.Y. Jan. 30, 1985) (emphasis in original) (quoting *Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*, 95 A.D.2d 5, 27, 465 N.Y.S.2d 606, 621 (4th Dep't 1983)). We believe that this narrow view of causation does not comport with New York law. Although a defect must be a substantial factor in causing a plaintiff's injuries, *Codling v. Paglia*, 32 N.Y.2d 330, 342, 345 N.Y.S.2d 461, 469–70, 298 N.E.2d 622, 628 (1973), it is clear that a "manufacturer's liability for injuries proximately caused by these defects should not be limited to [situations] in which the defect causes the accident, but should extend to situations in which the defect caused injuries over and above that which would have occurred from the accident, but for the defective design." *Caiazzo v. Volkswagenwerk*, 647 F.2d 241, 245 (2d Cir.1981) (applying New

York law). In *Caiazzo,* following a collision plaintiffs-appellants were ejected from their van because of a defective door latch assembly. Certainly, the defect did not cause the crash; nevertheless an action in tort was allowed because the defect enhanced the injuries. *Id.* at 244. Similarly, in *Bolm v. Triumph Corp.,* 33 N.Y.2d 151, 350 N.Y.S.2d 644, 305 N.E.2d 769 (1973), placement of a metal luggage rack on the gas tank of a motorcycle aggravated injuries from a collision. In finding liability the New York Court of Appeals stated that: "[n]either sound policy nor reason can be found to justify a distinction between the liability of the manufacturer whose defective item causes the initial accident and that of the manufacturer whose defective product aggragavates or enhances the injuries after an intervening impact." *Id.* at 159, 350 N.Y.S.2d at 650–51, 305 N.E.2d at 773; *see also Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.,* 652 F.2d 1165, 1166–67 (3d Cir.1981) (applying Pennsylvania law) (absence of fire extinguisher or warning on front-end loader aggravated injuries); *Turcotte v. Ford Motor Co.,* 494 F.2d 173, 180–83 (1st Cir.1974) (applying Rhode Island law) (car struck from behind burst into flames enhancing injuries); *Larsen v. General Motors Corp.,* 391 F.2d 495, 496–97, 503 (8th Cir.1968) (applying Michigan law) (defect in steering assembly aggravated injuries due to car crash).

■ Although the smoke detectors in the Butler home did not cause the fire, had they sounded a timely alarm the fire may have been detected earlier and the alleged resulting damages and injuries may have been less severe. The smoke detectors were placed at two points in the house—downstairs and upstairs; the fire assertedly started downstairs and according to Butler's deposition, he and his wife were upstairs asleep when they were awakened by the smoke. It may be that, given the opportunity, appellants can demonstrate that had the downstairs smoke alarm functioned properly, they would have been alerted at an earlier time and could have called the fire department even sooner, thereby limiting the damage suffered. In our view, the appellants should have an opportunity to offer evidence in an attempt to show that their injuries were enhanced as a result of the failure of the smoke detectors. *See Caiazzo,* 647 F.2d at 249–50.

■ The cases cited by appellees are not inconsistent with this conclusion. A review of the New York decisions on this point reveals three interrelated areas that must be examined once causation has been established to determine whether an action in strict liability may be maintained or whether a claim should be characterized solely as economic loss: (1) the nature of the defect; (2) the type of injury; and (3) the policy behind the imposition of strict liability.

The defect causing the injuries must be unreasonably dangerous to the owner of the product or to third parties. *Schiavone,* 56 N.Y.2d at 669, 451 N.Y.S.2d at 721, 436 N.E.2d at 1323, *reversing on the dissenting opinion below,* 81 A.D.2d at 228, 439 N.Y.S.2d at 937. Many defects, of course, do not create such a hazard. Thus, a defective air conditioning system, *County of Westchester v. General Motors Corp.,* 555 F.Supp. 290, 292 (S.D.N.Y.1983) (mem.) (applying New York law), a computer malfunction, *Antel Oldsmobile-Cadillac, Inc. v. Sirus Leasing Co.,* 101 A.D.2d 688, 688–89, 475 N.Y.S.2d 944, 945 (4th Dep't 1984), a malfunctioning harvesting combine, *Cayuga,* 95 A.D.2d at 27, 465 N.Y.S.2d at 621, and defective house siding, *Hemming v. Certainteed Corp.,* 97 A.D.2d 976, 976, 468 N.Y.S.2d 789, 790 (4th Dep't 1983), have all been characterized as economic loss cases. In contrast, in *Pennsylvania Glass,* damages from a fire in a front-end loader were aggravated by the manufacturer's failure to include warnings or a fire extinguisher on the product. The court held that this defect created a safety hazard for which an action in strict liability was appropriate. *See* 652 F.2d at 1175; *see also Potsdam Welding and Machine Co. v. Neptune Microfloc, Inc.,* 57 A.D.2d 993, 994, 394 N.Y. S.2d 744, 745 (3d Dep't 1977) (mem.) (spark from welding torch ignited plastic tubing).

Similarly, a malfunctioning smoke detector can create an unreasonable risk of harm in that the inhabitants of a structure who rely on such an alarm may be lulled into an unjustified sense of safety and fail to be forewarned of the existence of a fire. *See Pennsylvania Glass*, 652 F.2d at 1174–75. In our view, if appellants can show that the smoke detector herein did not function properly, this defect may be shown to have exposed them to an unreasonably dangerous condition.

The viability of a strict liability action depends not only on the presence of an unreasonably dangerous defect but also on the nature of the injury suffered. Strict liability concepts provide remedies for personal injury and physical damage to property, *id.* at 1175; *Potsdam Welding*, 57 A.D.2d at 994, 394 N.Y.S.2d at 745; Restatement (Second) of Torts § 402A (1966). Contract concepts provide remedies for pecuniary losses such as the value of the product, the cost of repair, lost profits or substitute equipment rentals, *see S.M. Wilson & Co. v. Smith Int'l, Inc.*, 587 F.2d 1363, 1376 (9th Cir.1978) (applying California law); *County of Westchester*, 555 F.Supp. at 292; *Seely v. White Motor Co.*, 63 Cal.2d 9, 18–19, 45 Cal.Rptr. 17, 22, 403 P.2d 145, 147–48 (1965) (Traynor, C.J.); *Schiavone*, 81 A.D.2d at 227–28, 439 N.Y. S.2d at 937–38; *Steckmar Nat'l Realty and Inv. Corp. v. J I Case Co.*, 99 Misc.2d 212, 215, 415 N.Y.S.2d 946, 949 (Sup.Ct. 1979). In contract cases, the buyer seeks to be placed in the position he would have been in had the seller performed, *see Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.*, 626 F.2d 280, 288 (3d Cir.1980) (applying Illinois law); *Martin v. Julius Dierck Equip. Co.*, 43 N.Y.2d 583, 589, 403 N.Y.S.2d 185, 188, 374 N.E.2d 97, 99–100 (1978), while in personal injury or property damage actions the plaintiff seeks to be placed in the position he occupied prior to the injury. *See id.* at 589, 403 N.Y.S.2d at

188, 374 N.E.2d at 100. Here, we conclude that the appellants have alleged both personal injuries and property damage claims that properly can be asserted under principles of strict products liability law. *See Codling*, 32 N.Y.2d at 342, 345 N.Y.S.2d at 469–70, 298 N.E.2d at 628; *Potsdam Welding*, 57 A.D.2d at 994, 394 N.Y.S.2d at 745–46. It is difficult to see how these alleged injuries can be characterized as an economic expectation in the same category as those cases in which the malfunction of a product caused damages "consisting of the cost of repairs to put the equipment into reasonably operable condition, and other economic loss due to downtime, loss of production, additional labor incurred, and equipment rentals." *Schiavone*, 81 A.D.2d at 227–28, 439 N.Y.S.2d at 937.

The policy behind the distinction between strict liability and economic loss cases also supports our decision. Strict liability is based on the premise that a manufacturer is in the best position to insure that its products are safe and to bear the cost of liability by spreading it among its customers. *Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 63–64, 27 Cal.Rptr. 697, 701, 377 P.2d 897, 901 (1962) (Traynor, J.); *Codling*, 32 N.Y.2d at 341, 345 N.Y.S.2d at 468, 298 N.E.2d at 628. This distinction: "rests ... on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands." *Schiavone*, 81 A.D.2d at 230–31, 439 N.Y. S.2d at 939 (emphasis deleted) (quoting *Seely*, 63 Cal.2d at 12–13, 45 Cal.Rptr. at 23, 403 P.2d at 151).[1] In the latter situation, a

---

**1.** Some cases contain dicta apparently interpreting the "level of performance" language in *Schiavone* to mean that when a product deteriorates or breaks down, the resulting injury is economic loss. *See Antel*, 101 A.D.2d at 689,

475 N.Y.S.2d at 945; *Hemming*, 97 A.D.2d at 976, 468 N.Y.S.2d at 790; *Cayuga*, 95 A.D.2d at 26–27, 465 N.Y.S.2d at 621. This interpretation, apparently adopted by the district court here, oversimplifies the holding of *Schiavone*. In ad-

buyer can bargain for a warranty that the product will serve his business needs, *Seely,* 63 Cal.2d at 12–13, 45 Cal.Rptr. at 22–23, 403 P.2d at 151, or for a lower price, *Jones & Laughlin,* 626 F.2d at 288. A buyer need not, however, bargain for the safety of a product. Therefore, when a product is unreasonably dangerous by reason of a defect, the law imposes strict liability on the manufacturer for personal injuries and property damage fairly traceable to the defective product.

As the property damage claim is before us on a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, "no material issues of fact [must] remain to be decided, and the burden is on the moving party to show that such is the case." *Falls Riverway Realty, Inc. v. City of Niagara Falls,* 754 F.2d 49, 57 (2d Cir.1985). We cannot say as a matter of law that a malfunctioning smoke detector is not a dangerous product. Thus, appellants are entitled to have an opportunity to show that the alleged failure of the smoke detector to sound a timely alarm exposed them to an unreasonably dangerous condition, and that their damages are attributable to this alleged failure, *see Caiazzo,* 647 F.2d at 249–50. In view of our holding with respect to the first cause of action, the district court erred in dismissing the second and third causes of action. We need not decide at this time whether a claim for loss of consortium might be derivative of a personal injury claim, *see Campbell v. City of Atlanta,* 277 F.Supp. 395, 396 (N.D.Ga.1967) (applying Georgia law), although we note that it is difficult to see how these two causes of action can be considered derivative of a claim for property damage or, for that matter, why appellants still would not have stated causes of action had they even deleted the property damage cause of action and pressed the personal injury and loss of consortium

ditiion, those cases which contain this language were properly characterized as economic loss actions because the products' defects were either not dangerous and/or there was no personal injury or property damage suffered. *See Antel,* 101 A.D.2d at 688–89, 475 N.Y.S.2d at 945

claims. *Se Barnes v. Sears Roebuck and Co.,* 406 F.2d 859, 862 (4th Cir.1969) (applying Virginia law). We therefore reverse and remand to the district court for further proceedings.

(computer); *Hemming,* 97 A.D.2d at 976, 468 N.Y.S.2d at 790 (house siding); *Cayuga,* 95 A.D.2d at 27, 465 N.Y.S.2d at 621 (harvesting combine); *Sturges Mfg. Co. v. Utica Mutual Ins. Co.,* 45 A.D.2d 52, 54, 356 N.Y.S.2d 692, 694–95 (3d Dep't 1974) (no injury).