■ JAMES C. KINEON et al., Appellants-Respondents, v BLUEGRASS ELKHORN COAL CORPORATION et al., Respondents-Appellants.—Order, Supreme Court, New York County (Louis Grossman, J.), entered October 10, 1985, which denied plaintiffs' motion for summary judgment and defendants' cross motion for summary judgment, modified, on the law, plaintiffs' motion is granted, and judgment is awarded plaintiffs against defendants in the amount of $150,000 with interest at the rate of 10% a year from November 17, 1980, and, as so modified, otherwise affirmed, without costs.

On November 17, 1980, plaintiffs loaned defendant Bluegrass Elkhorn Coal Corporation (Bluegrass) the amount of $150,000. The loan was evidenced by four promissory notes (convertible into Bluegrass common stock at plaintiffs' option), two payable on November 17, 1981, and two on November 17, 1983. Defendants Broder and Malesko, the only owners of Bluegrass stock, guaranteed payment of each of these notes upon identical terms. Bluegrass failed to make the first interest payment due on April 30, 1981, and, on February 11, 1982, plaintiffs accelerated the notes. Suit was commenced on July 6, 1982 pursuant to CPLR 3213. The motion for summary

judgment in lieu of complaint was granted on default as against Bluegrass, and denied as against defendants Broder and Malesko with the court making no explicit findings of fact or law. The parties thereupon engaged in disclosure proceedings, following which each moved for summary judgment. Both appeal from the denial of their respective summary judgment motions. In the main, the argument on these motions repeated the points made on the first motion for summary judgment in lieu of complaint.

Defendants Broder and Malesko rely upon a clause in the guarantee terminating their obligation thereunder if Bluegrass obtains "additional equity and/or debt financing" of at least $250,000 within 60 days, that is, by January 17, 1981. They argue that such condition was satisfied when, on December 31, 1980, they made four promissory notes, two totaling $200,000 payable by Broder to Bluegrass on June 30, 1981 and December 31, 1981, and two totaling $50,000 payable by Malesko to Bluegrass on the same dates. In exchange, also on December 31, 1980, Bluegrass made a note to Broder for $200,000, and another note to Malesko for $50,000, both due on December 31, 1984. There is no dispute that from February through December 1981, Broder and Malesko "infused" Bluegrass with at least $250,000 in cash, which was never repaid.

Defendants contend that this exchange of promissory notes constituted an instance of "debt financing" within the meaning of the guarantee, and was effective to release them from their obligation thereunder. If the term "financing" has a fixed legal meaning, the parties apparently are not aware of it, as the only authority cited in the argument is a dictionary defining it as "[t]he act or process or an instance of raising or providing funds". Plaintiffs emphasize the part of the definition requiring that there be a "raising or providing" of funds, meaning, say plaintiffs, an actual receipt of new cash. Defendants, on the other hand, emphasize the part of the definition indicating that financing can connote the "process" of raising funds, a significant aspect of which, say defendants, is the procurement of a "genuine" "commitment" to provide funds. Giving this connotation of "financing" as a "process" full weight, it would appear to require the court to find whether defendants, as of December 31, 1980, were genuinely committed to infusing Bluegrass with $250,000 by December 31, 1981. Such genuineness, defendants contend, is established by the fact that they honored their notes and actually infused Bluegrass with more than $250,000 while it was still in business.

Defendants' construction is circuitous and strained, and makes legal rights and obligations turn on a notion of "genuineness" so ill-defined and inexact as to be unworkable. Its effect, moreover, is virtually to read out of the guarantee the 60-day limitation for "obtain[ing]" financing. If all defendants had to do to release themselves from liability was exchange notes with Bluegrass, a corporation wholly owned by them, there would be no constraints (other than honesty and fair dealing) against defendants issuing such notes at any time and then back-dating them to within the 60 days. This is to leave plaintiffs at defendants' mercy, a result the law would abhor (22 NY Jur 2d, Contracts, § 194). In construing contracts, the court should reach for fair and reasonable results. *(Ibid.)*

The construction urged by defendants is also at odds with the structure of the guarantee itself, which, as it happens, contains a second clause whereunder, if defendants should fail to obtain additional financing of at least $250,000 within the 60 days, they could still release themselves from the guarantee by obtaining additional financing of at least $750,000 at any time prior to the maturity of Bluegrass's notes to plaintiffs. Clearly, the effect of the two clauses, juxtaposed, is to indicate that time was a matter of primary concern. Defendants would have the court ignore this concern, and the fact that after the initial 60-day period expired, the financing burden sufficient to release defendants from the guarantees would increase by the sum of $500,000.

Although the argument passes over it, the court finds the word "debt" in the phrase "debt financing" also helpful in ascertaining the parties' intent. It too has no fixed legal meaning, but the one thing it is generally not understood to mean is an obligation payable on a contingency (11 Words and Phrases, Debt, "Conditional, uncertain, contingent or future obligation", at 341). An ordinary businessman would have regarded payment of Bluegrass's notes to defendants as contingent upon payment of defendants' notes to Bluegrass. True, as a matter of law, an exchange of promissory notes, at least as between the makers, is effective to create two separate, enforceable contracts, the giving of one constituting good consideration for the taking of the other *(Rice v Grange,* 131 NY 149). But, as defendants accept to understand full well, for the court to apply this principle here, it must accept that defendants, as officers of Bluegrass, stood ready to sue themselves, as individuals, in the event their personal notes to Bluegrass were not honored. There is no need to pierce the corporate veil in order to avoid such a hypothesis, it being

sufficient to note the extreme lengths defendants must go in carrying the logic of their own argument. Thus, they compare their notes to Bluegrass to a bank letter of credit, arguing that the obligation represented by the former was as binding as the latter. Putting aside the question of whether this is correct as a matter of law, the court, in construing a contract, should consider the relation of the parties (22 NY Jur 2d, Contracts, § 195). Given that the record does not disclose defendants' personal financial circumstances, other than that plaintiffs dealt with them as the owners of a corporation in need of funds, it would be unreasonable for the court to equate defendants to a bank standing at arm's length from Bluegrass.

Defendants' contention that plaintiffs' relationship to Bluegrass was essentially that of an "investor" as opposed to a "creditor" does not further their construction of the guarantee. If all plaintiffs expected from defendants was honesty and good judgment in their management of Bluegrass, debt instruments would not have been used to evidence Bluegrass's obligations to them.

Finally, we note that plaintiffs' construction finds strong support dehors the instrument. On two occasions, some 2½ months and then some 6½ months after Bluegrass's default, defendant Broder acknowledged the debt in writing to plaintiffs. Broder's first letter expresses a sense of personal regret that Bluegrass was not able to meet its obligation, acknowledges defendant Broder's personal obligation to plaintiff under the guarantee, and proposes a "repayment schedule as regards said loans" in the total amount of $75,000 with interest to be "settled between ourselves". Broder's second writing has the earmarks of a proposal prepared by counsel. It offers to reduce the loans made by plaintiffs to the corporation by $25,000 in exchange for shares of stock in another company pursuant to a complex valuation formula, with defendant Broder's liability on the guarantee to be reduced *pro tanto.* Plaintiffs were to forego suit against Broder on the guarantee for a stated period of time, and were also to agree to other conditions precedent to suit, the intent being to reach an agreement with Broder without prejudicing plaintiffs' rights against Broder's coguarantor, defendant Malesko.

Defendants would have the court disregard these writings as made in a good-faith attempt to settle a disputed claim. What is missing from this contention is any showing that a dispute as to liability existed. Defendants nowhere denied plaintiffs' repeated assertions that the first time defendant ever asserted

that they were released from liability was in their opposition papers to the motion for summary judgment in lieu of complaint. If that is so, then defendant Broder made his offers to liquidate damages without ever broaching the subject of liability. Certainly there is nothing on the face of Broder's writings themselves to indicate that liability was being challenged. On the contrary, the writings impart a concession of liability. As such, they are admissible (see, Richardson, Evidence § 225 [Prince 10th ed]; 5 Frumer and Biskind, Bender's New York Evidence § 312.02), and constitute compelling evidence of the construction urged by plaintiffs. (We note in this connection that both defendants are represented by the same attorney, and otherwise give no indication that their interests are in conflict.)

Two other financing arrangements were urged by defendants, in the proceedings before Special Term, as having satisfied the condition that $250,000 in additional financing be obtained within 60 days. Although not argued on the appeal, we have reviewed the contentions defendants made in this regard, and find them lacking in merit. Concur—Sullivan, J. P., Milonas and Wallach, JJ.

Fein and Ellerin, JJ., dissent in part in a memorandum by Ellerin, J., as follows:

Since I find that issues of fact exist concerning the individual defendants' satisfaction of the conditions terminating their guarantees, I would affirm the denial of the motion and cross motion for summary judgment.

Plaintiffs advanced $150,000 to defendant Bluegrass Elkhorn Coal Corporation (Bluegrass) in exchange for notes aggregating that amount and bearing interest of 10% per annum issued by Bluegrass on November 17, 1980. The notes were convertible into common stock of the company within one year of issue.

Individual defendants Daniel Broder and John Malesko, the principals of the private closed corporation Bluegrass, personally guaranteed the notes that Bluegrass issued to the plaintiffs. Each guarantee included a provision terminating it and releasing the individuals conditioned upon the occurrence of certain events. The condition here at issue states: "The Company [Bluegrass] obtaining, within 60 days from the date of issue of this Note, additional equity and/or debt financing in an amount not less than $250,000 in the aggregate".

Bluegrass never made payments to the plaintiffs under the notes and subsequently the Kineons brought this action

against both Bluegrass and the individual guarantors. Plaintiffs obtained a judgment against the corporation, which remains unsatisfied, and, in the instant motion seek summary judgment against the individual defendants on the guarantees. Defendants cross-moved for summary judgment dismissing the complaint, claiming that the condition was satisfied and the guarantees extinguished.

The defendants point to several transactions as satisfying the condition that the corporation obtain "equity and/or debt financing" in the amount of $250,000 within 60 days. Pertinent here is the individual defendants' assertion that their execution and delivery of promissory notes in the amount of $250,000 to the corporation on December 31, 1980 in exchange for promissory notes from the corporation to them constituted "debt financing" within the meaning of the condition of the guarantees.

Plaintiffs assert that this exchange was merely a paper transaction, a sham and a fraud, and that the corporate veil should be pierced to invalidate the transaction. They also claim that since no cash was immediately transfused into the corporation the exchange of promissory notes cannot constitute "financing". However, these claims should not be summarily resolved on the papers submitted on these motions, which present triable issues of fact requiring a trial.

The notes issued to the Kineons indicate that their advance of cash to Bluegrass may well have been in the nature of an investment in this recently formed corporation rather than a straight loan, as evidenced by the convertible nature thereof. Viewing the personal guarantees executed by Broder and Malesko and the termination clauses in that context, it would appear that the guarantees were designed to secure the plaintiffs' investment should the company not continue to operate and grow. The acquisition of additional financing by the corporation would, of course, alternatively furnish the corporation the wherewithal to continue its operations and provide the plaintiffs' investment a fair opportunity for growth, and the delivery of the individual defendants' promissory notes to Bluegrass provided that opportunity. They represent the commitment of Broder and Malesko to inject more capital into the corporation so as to sustain its continued operation. The claim that this transfer of notes was a paper or sham transaction is not proven on these papers. Although Broder and Malesko were the sole shareholders of Bluegrass, they were under no obligation to further capitalize the corporation. The identity of the corporation as a separate entity must be respected and the

showing on the papers submitted on the motion is insufficient to establish, for purposes of granting summary judgment, that these promissory notes constituted self-dealing or that we are otherwise required to pierce the corporate veil.

As has ofttimes been noted, in order to grant summary judgment it must clearly appear that no material and triable issue of fact is presented and that where there is any doubt as to the existence of such issues or where the issue is "arguable", summary judgment should be denied. *(Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395, 404). Here, the individual defendants have demonstrated that they did actually pay over $250,000 in cash into the corporation during 1981, evidenced by a series of canceled checks and records of wire transactions, all claimed to be pursuant to the promissory notes. It is also undisputed that the corporation was enabled to continue to operate by virtue of these cash contributions. Plaintiffs claim that as these payments were not made within 60 days of the Kineon convertible notes they cannot constitute " 'financing' within sixty days" within the meaning of the termination clauses of the guarantees. However, the promissory notes to which these cash payments are purportedly referable were executed and delivered within 60 days. It is precisely because the language of the guarantees is ambiguous in this respect that the resolution of this issue must await trial.

Similarly, the references to the claims in the subsequent letters exchanged between the parties, in an apparent good-faith effort to settle the matter, also fail to provide the conclusive proof necessary to warrant summary judgment in light of the intimate relationship between the individual defendants and the corporation of which they were the sole managing officers.