■ SHALOR DESIGNS, INC., Appellant, v NBA PROPERTIES, INC., et al., Respondents, et al., Defendant. [696 NYS2d 32] —Order, Supreme Court, New York County (Ira Gammerman, J.), entered on or about March 10, 1997, which granted the motion of defendants-respondents NBA Properties, Inc. (NBA) and Salvatore LaRocca (LaRocca) to dismiss the cause of action against them for tortious interference with contract and granted NBA's motion to dismiss the cause of action against it for prima facie tort; and order, same court and Justice, entered March 6, 1998, which, after a jury trial, granted NBA's motion for judgment notwithstanding the verdict and set aside the $1,500,000 verdict against NBA, unanimously affirmed, without costs.

Plaintiff Shalor Designs, Inc. (Shalor) was in the business of selling apparel to retailers. Defendant NBA is the licensing division of the National Basketball Association. NBA had licensed to nonparty ITP, Inc. the rights to produce and sell sports apparel bearing various NBA logos. In 1992, Shalor entered into a sublicensing agreement with ITP to produce and sell such apparel. In May 1994, Shalor contracted with defendant Target Stores (Target) to sell clothing produced under this license agreement to Target.

NBA, Shalor and ITP agreed to end the relationship in July 1994. They executed a settlement agreement which terminated ITP's license but permitted Shalor to fill certain outstanding purchase orders, including Target's. The provision of the settlement agreement at issue in the instant case stated: "The parties agree to keep this Agreement confidential in every respect except as is necessary to effectuate the terms hereof". Shalor's claims arise out of an alleged breach of this confidentiality clause by defendants-respondents.

On July 28, 1994, Target's buyer, Troy Myers, sought out defendant LaRocca, who was the Vice President of NBA Properties, and asked about the status of Shalor. LaRocca truthfully replied that Shalor would fill Target's outstanding orders, but afterwards would no longer be in business with NBA. Myers then advised Shalor that Target was canceling the two largest of its three outstanding orders. Myers claimed that Target was considering cutting back its orders from Shalor, even before the conversation with LaRocca.

Shalor eventually sold the goods to other buyers, but at a lower price than Target would have paid. Allegedly because of the shortfall, Shalor's factor Century Business Credit Corporation seized its inventory, which led Shalor to go out of business. Shalor brought this action, asserting a number of contract and tort claims arising out of the alleged breach of confidentiality.

A $1.5 million verdict for plaintiff was set aside on the grounds that the jury's determination that NBA breached the confidentiality clause and that such breach caused Target to cancel its orders was "legally unsupportable". We affirm.

A contract must be construed so as to reach a fair and reasonable result (*Kineon v Bluegrass Elkhorn Coal Corp.*, 121 AD2d 980, 982). Trial testimony indicated that a primary purpose of the confidentiality clause was to protect Shalor's reputation in the industry. If it were widely known that Shalor was a distressed wholesaler, retailers would look down on Shalor's goods and try to take advantage of its financial duress. Nonetheless, it would be inappropriate to hold defendants liable for LaRocca's truthful response to Myers' direct question about the status of the parties' business arrangements.

Plaintiff is unable to say what response would have been preferable, because LaRocca simply had no realistic options. Should LaRocca have said "No comment"? Evasiveness would only have confirmed Myers' suspicions that something was amiss with Shalor. Unlike an attorney, or an employee possessed of trade secrets, NBA was not in a publicly recognized

confidential relationship with Shalor which would have given LaRocca a plausible excuse for his silence. Defendants persuasively argue that the disclosure is covered by the exception in the confidentiality clause: by reassuring Myers that Shalor would still fulfill the outstanding orders, NBA "effectuate[d] the terms" of the settlement agreement which protected Shalor's right to perform under existing sale contracts. Had LaRocca said nothing, Myers might have assumed the worst, namely that even the current purchase orders would not be honored.

Even Shalor did not go so far as to argue that LaRocca should have lied to Myers. Nor, as a matter of policy, should the court impose such an obligation (*Remington Arms v Fox & Murphy*, 206 Misc 1030, 1035 [court will not require misrepresentation to innocent purchasers in order to vindicate manufacturer's rights as against retailer]). Indeed, if Target relied to its detriment on a false statement by NBA suggesting that Target could expect a viable long-term relationship with Shalor, Target might have a cause of action against NBA despite the lack of privity between them (*see, Randy Knitwear v American Cyanamid Co.*, 11 NY2d 5).

In short, LaRocca had no realistic options other than to tell Myers the truth, and his confirmation of Shalor's right to fill the existing Target orders fell within the exception to the confidentiality clause. Accordingly, the IAS Court was correct to set aside the verdict, because there was "no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial" (*Cohen v Hallmark Cards*, 45 NY2d 493, 499). As for Shalor's prima facie tort and tortious interference claims, the IAS Court properly dismissed them before trial, since NBA's actions did not amount to a legal wrong, for the reasons previously stated.

We also note that the jury's award of damages was against the weight of the evidence (*Nicastro v Park*, 113 AD2d 129, 135). There was conflicting expert testimony as to Shalor's value as a company. Shalor had suffered serious losses for over a year, and was certainly in decline. Nonetheless, the defense expert's insistence that the company had zero value was somewhat belied by the fact that Century sold Shalor's repossessed assets for about $391,000. On the other hand, plaintiff's expert's inflated valuation of $1.9 million was speculative and unreliable. While his methods may have been sound, his starting data was based on one financial projection by Shalor's CFO, who had previously predicted profits of $1.7 million for a year

in which Shalor ended up *losing* $2.5 million. As plaintiff's cause of action is legally insufficient, however, a new trial on damages is not necessary. We have considered plaintiff's other contentions and rejected them.

Motion for reargument granted, and upon reargument, the unpublished decision and order of this Court entered on May 27, 1999 (Appeal Nos. 1088-1089) is recalled and vacated and a new decision and order substituted therefor. Insofar as it seeks leave to appeal to the Court of Appeals, the motion is denied. Concur—Rosenberger, J. P., Williams, Mazzarelli, Rubin and Friedman, JJ.